331

(No. 90-CC-2137-)

LELAND SHALGOS, d/b/a ILLINOIS BROODMARE, Claimant, *v.*
THE STATE OF ILLINOIS, Respondent.

*Opinion filed June 22, 1994.*

LELAND SHALGOS, *pro se*, for Claimant.

ROLAND W. BURRIS, Attorney General (JOHN MOR-RISSEY, Assistant Attorney General, of counsel), for Respondent.

## OPINION

JANN, J.

This matter came to be heard for trial on or about February 1, 1991. After the hearing, both parties submitted briefs in the order selected by the parties.

At the hearing, the evidence was the following:

Leland Shalgos, doing business as Illinois Broodmare, contacted James Ferguson, an individual who trains, breeds and owns horses, to train a racehorse named "Don't Delay." In 1989, Mr. Ferguson trained horses in his stables at the Du Quoin State Fairgrounds. Mr. Ferguson moved his stable from the Du Quoin State Fairgrounds to the Springfield State Fairgrounds in April or May of 1989. Mr. Ferguson's wife signed a lease agreement with the Illinois

Department of Agriculture to lease space to stable his horses at the Springfield State Fairgrounds. One of the particular barns he leased space in was barn number 42. The lease was admitted into evidence. Mr. Ferguson took possession of the horse "Don't Delay" to train her to run in state races in Illinois, however, prior to taking possession of the horse, he inspected the horse. Mr. Ferguson concluded that the horse was a high quality two-year-old filly. Because the horse was Illinois bred, she was eligible to compete for 14 million dollars in potential winnings in Illinois.

On May 20, 1989, Mr. Ferguson was in Springfield training horses including "Don't Delay." After training the horses, he left Springfield for Marion, Illinois. However, prior to leaving barn 42 he noticed that a wire from a telephone pole had come off the barn and was on the ground emitting sparks. The other end of the wire was attached to a telephone pole. Mr. Ferguson contacted the security department regarding the sparking wire. On May 21, 1989, Mr. Ferguson received a telephone call in Marion, Illinois that barn 42 in Springfield was on fire. "Don't Delay" was badly injured in the fire and had to be destroyed on May 23, 1989.

The fire in barn 42 was investigated by the State Fire Marshall's Division of Arson Investigation. The fire marshall determined that the fire started due to a malfunction in an electrical outlet in the area of stall number 40, barn 42 as a result of conduit overheating which led to the outlet.

The contract executed by the Illinois Department of Agriculture and the Fergusons stated in summary that individuals leasing space in the buildings and on the premises of the Illinois State Fairgrounds are notified that the buildings and premises have been declared

unsafe and in violation of code by the Illinois Fire Marshall. The lease agreement further states that the signature of the lessee "specifically acknowledges that even in the face of these warnings and code and structural violations and occupancy violations, he is/are assuming the risk and is/are going to occupy the premises anyway."

The parties stipulated that the total out-of-pocket expenses incurred by Leland Shalgos d/b/a Illinois Broodmare for the breeding, feeding, training, etc. of "Don't Delay" were $6,947.28 to the date the horse was humanely destroyed.

The primary issue in this matter is whether the State of Illinois by the Department of Agriculture is liable for the loss of "Don't Delay" or whether the claim is barred by the doctrine of assumption of risk. Briefly, the State produced evidence that the lease agreement for the barn at the State Fairgrounds in which "Don't Delay" was lost explicitly informed the lessee that, in summary, the barns were unsafe, that the State Fire Marshall had found that barns were unsafe and that if the lessee rented the barns, he did so at his own risk. The State further argues that Mr. and Mrs. Ferguson were the agents of the Claimant since the Claimant put "Don't Delay" in their hands to train and house. As a result, the State argues that the claim must be denied. Claimant responds by essentially arguing that first, the Fergusons were not his agents and their conduct in knowingly housing the horse in an unsafe barn cannot be imputed to him; and second, even if the Fergusons were his agents, the State cannot avoid liability by invoking the defense of assumption of risk because that defense has been removed in Illinois by statute, specifically section 1 of the Lessor's Liability Act. 765 ILCS 705/1.

The statute states in relevant part:

"Every covenant, agreement or understanding in or in connection with or collateral to any lease of real property, exempting the lessor from liability for damages for injuries to person or property caused by or resulting from the negligence of the lessor, his or her agents, servants or employees, in the operation or maintenance of the demised premises ° ° ° shall be deemed to be void as against public policy and wholly unenforceable."

An examination of the annotations to this statute does not indicate any exception for buildings owned or operated by the State of Illinois or its agencies. The plain language of the statute states that disclaimers of liability and waivers of liability in connection with leases are void as against public policy. The obvious rationale behind such a statute is to prevent a landlord from leasing property and avoiding liability by disclaimers in the lease. The statute forces the landlord to maintain the property or not to lease it. The State offered no other defense such as lack of notice or lack of proximate cause. The evidence demonstrated that the State was on notice of the unsafe condition of the barns. This is evident from the State's lease in which it acknowledges that the premises are defective and that the State Fire Marshall has found them to be in violation of the law. In addition, Claimant produced evidence that prior to the fire, a malfunction in the electrical wiring was brought to the attention of State personnel. There has been no argument by the State that it does not have an obligation to use reasonable care in the maintenance of its property. Finally, the State provided no evidence and made no dispute that the duty of reasonable care was not breached. The State maintained that all legal duties normally imposed on it were waived by the assumption of risk clause in the lease.

Claimant has the duty to prove that the State was negligent and that the State's negligence was the proximate cause of his damages. (*Hoekstra v. State* (1985), 35 Ill. Ct. Cl. 156, 159-160; *Hipka v. State* (1982), 35 Ill. Ct. Cl. 581.) In this case, there is no dispute that Claimant has met his burden. The State failed to maintain its property

and left it in a negligent condition. As a result of the State's negligence, the Claimant suffered a loss.

The evidence presented by the parties as to damages varied greatly. The State's expert witness Carl Becker, gave his opinion that "Don't Delay" was worth $300 to $1,000 at auction. Claimant's evidence put "Don't Delay's" value at $40,000 to $60,000. Claimant's evaluation was based upon the horse's pedigree, conformation, i.e., the horse's physical attributes, and the evaluation of the horse's trainer, Mr. Ferguson. Based upon all of the facts, the evaluation by William Rosenthal, an insurance broker and owner of a horse sale company, appears to be the most accurate. He valued "Don't Delay" at between $40,000 and $50,000 based upon the horse's pedigree, conformation and the trainer's assessment of her, unfortunately, untried racing ability. The State's expert admitted that two-year-old racehorses sold at auction are generally assumed to be defective and therefore sell for very low prices. All of the experts, including the State's Mr. Becker, agreed that Mr. Ferguson is a competent and knowledgeable trainer who would have the best insight into "Don't Delay's" potential as a racehorse and broodmare.

Based upon the foregoing, we hereby award Claimant $20,000 for the loss of his racehorse due to Respondent's negligent conduct.