CHARLES ALMENDAREZ, as Parent and Guardian of Charles Almendarez, Jr., a Minor, Plaintiff-Appellant, v. PAUL KELLER, Defendant-Appellee (Peter Pavia *et al.*, Defendants).

First District (5th Division)   No. 1—89—0254

Opinion filed December 21, 1990.

Ryan & Viglione, of Waukegan, and David A. Novoselsky & Associates, of Chicago (David A. Novoselsky and Linda A. Bryceland, of counsel), for appellant.

McKenna, Storer, Rowe, White & Farrug, of Chicago (James P. DeNardo, Gregory L. Cochran, and Christine L. Olson, of counsel), for appellee.

PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Plaintiff, Charles Almendarez, Jr., by his father Charles Almendarez, appeals from the entry of summary judgment under section 2—1005 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005) in defendant Paul Keller's favor on counts V and VI of plaintiff's complaint. We consider the following two issues: (1) whether, as alleged in count V, defendant, a landlord, could be liable for negligence to plaintiff, who was an employee of his tenant, for injuries sustained on the leased premises; and (2) whether, as alleged in count VI, defendant was liable under the Child Labor Law (Ill. Rev. Stat. 1989, ch. 48, par. 31.1 *et seq.*) when his tenant employed a minor. We affirm.

Plaintiff filed a seven-count complaint, as amended, to recover for

injuries he sustained while operating a meat grinder in Pavia Quality Meats, a meat market. Plaintiff was an employee of the meat market at the time of the accident although he was only 14 years old. The meat market was owned by Peter Pavia, who leased the premises from defendant. Nick Pavia was an employee of the meat market.

Counts I and III of the complaint were directed against Peter Pavia, and count II was directed against Nick Pavia. Both parties have settled with plaintiff and neither is involved in this appeal. Counts IV through VII were directed against defendant; however, only counts V and VI are relevant on appeal.

In count V of the complaint, plaintiff alleged that defendant owned the premises and knew there was a meat grinder on the premises which was "hazardous and dangerous." Plaintiff also alleged that defendant knew plaintiff, a minor, was an employee of the meat market and could not appreciate the risk of the meat grinder. Plaintiff alleged defendant was negligent when he allowed plaintiff to be present in the meat market, failed to supervise him, failed to prevent him from operating the meat grinder, permitted the meat grinder to remain on the premises, and failed to warn him of the danger.

Count VI alleged that defendant violated the Child Labor Law when he "permitted or allowed" plaintiff, a minor, to work in the meat market.

Defendant's answer to count V is not in the record, but in his answer to count VI, he denied the material allegations.

Defendant moved for summary judgment on counts IV through VII, relying on his affidavit and his lease agreement with Peter Pavia. In his affidavit, defendant stated that he owned the premises, leased it in its entirety to Peter Pavia, and had no ownership interest in the meat market or its equipment. The lease agreement provided that if the meat market permitted any unlawful or immoral practice on the premises, defendant had the right to terminate the lease.

In response to defendant's motion for summary judgment, plaintiff relied on the meat market's business license, Peter Pavia's answers to interrogatories, affidavits from Jim Lagan and Mark Wesley, and depositions of defendant and Peter Pavia.

The meat market's business license showed that it was approved by defendant, who was a trustee of the village where the meat market was located.

In his answers to interrogatories, Peter Pavia stated that prior to the accident, defendant said to him, in reference to plaintiff, "I see you got a new kid working for you, huh?"

Jim Lagan, a former employee of defendant, stated in his affidavit

that defendant knew plaintiff was working in the meat market and that Lagan told defendant that plaintiff was one year behind him in school.

Mark Wesley, a former employee of the meat market, stated in his affidavit that he worked there when he was a minor and he believed defendant knew he was a minor. Wesley had occasionally sliced meat for defendant.

In his deposition, defendant testified that he did not have an ownership interest in either the meat market or its equipment. He had a set of keys to the premises although he never used them. A fuse box was located inside the meat market for apartments upstairs. He had never seen plaintiff before the accident and did not know he was an employee of the meat market.

Peter Pavia testified in his deposition that defendant knew plaintiff was working at the meat market and never objected to it. Pavia testified he owned the meat grinder.

The trial judge granted defendant's motion for summary judgment on counts IV through VII. Plaintiff appeals from that order but only raises arguments concerning counts V and VI.

OPINION

■■ Summary judgment should be granted if the pleadings, depositions, and affidavits reveal there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c).

Count V of plaintiff's complaint alleged that defendant, the landlord, was liable for negligence to plaintiff, for injuries sustained in the leased premises. The trial judge granted defendant's motion for summary judgment, finding defendant did not owe plaintiff a duty of care. Whether defendant had a duty to exercise reasonable care is a question of law properly decided on a motion for summary judgment. *Rowe v. State Bank* (1988), 125 Ill. 2d 203, 531 N.E.2d 1358.

■ Generally, a landlord is not liable for injuries caused by a defective condition on the premises leased to a tenant and under the tenant's control. (*Rowe*, 125 Ill. 2d 203, 531 N.E.2d 1358.) A lease is a conveyance of property ending the landlord's control over the leased premises, which is a prerequisite to tort liability. (*Wright v. Mr. Quick, Inc.* (1985), 109 Ill. 2d 236, 486 N.E.2d 908.) Only the tenant, as the party in possession and control of the leased premises, could be liable to persons injured on the premises. (*Wright*, 109 Ill. 2d 236, 486 N.E.2d 908.) However, if the landlord retains control of a portion of the premises leased to the tenant, the landlord has a duty to maintain

that part of the premises in a reasonably safe condition. *Rowe*, 125 Ill. 2d 203, 531 N.E.2d 1358.

▮ Plaintiff contends that defendant retained control over the leased premises, relying on testimony that defendant had keys to the premises and a fuse box was located inside the meat market. These facts do not exhibit defendant's control over the premises. The lease agreement states that Peter Pavia rented the "ground floor meat store" and no portion was retained for defendant's control. Further, Pavia owned the meat grinder. It is clear that the premises and the meat grinder were under Pavia's control.

Plaintiff also argues that under *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 126 N.E.2d 836, defendant had a duty to exercise reasonable care for plaintiff's safety. In *Kahn*, a minor trespassed on a vacant lot under construction and was injured on a pile of lumber. The supreme court considered the liability of the contractor building a house on the lot and the lumber company that stacked the lumber. The liability of the owner of the property was not an issue on appeal. The court found that the lumber company, as the creator of the dangerous condition, and the contractor, as the party in possession and control of the property, owed a duty of care to the minor. The court stated that if an owner or person in possession and control of the premises knows or should know that children frequent the premises, he has a duty of care to protect children from a dangerous condition that could cause injury.

*Kahn* is inapplicable to the case at bar. *Kahn* did not consider the liability of a landlord for injuries that occur on the leased premises. Further, defendant in this case did not create the dangerous condition and was not in possession and control of the premises. Therefore, defendant did not owe a duty to plaintiff and summary judgment in defendant's favor on count V was proper.

Count VI of plaintiff's complaint alleged that defendant violated section 1 of the Child Labor Law (Ill. Rev. Stat. 1989, ch. 48, par. 31.1) when he "permitted or allowed" plaintiff to work in the meat market. The trial judge granted defendant's motion for summary judgment, finding that defendant was not liable under the law.

▮ Section 1 of the Child Labor Law provides that minors under 16 years old cannot be "employed, permitted or allowed to work" in many occupations. A defendant who does not directly employ a minor can be liable under the law if he has enough control over the employer to discover the illegal employment and terminate it. *Eads v. Thomas* (1988), 167 Ill. App. 3d 529, 521 N.E.2d 628.

As evidence of defendant's control over the meat market, plaintiff

relies on a provision in the lease between defendant and Peter Pavia which allowed defendant to terminate the lease if the meat market conducted any unlawful practice on the premises. Plaintiff contends that because defendant did not terminate the lease although he allegedly knew plaintiff was a minor, defendant permitted or allowed plaintiff's employment.

A defendant's right to rescind a contract with an employer is generally insufficient to impose liability under the Child Labor Law. (*Coty v. U.S. Slicing Machine Co.* (1978), 58 Ill. App. 3d 237, 373 N.E.2d 1371.) In *Coty*, plaintiff, a 15-year-old employee of a restaurant, was injured while using a meat-slicing machine. The restaurant had a franchise agreement with a franchisor under which the restaurant agreed to comply with all Federal and State laws. If the restaurant breached the franchise agreement, the franchisor could terminate it. Plaintiff filed a complaint against the franchisor for her injuries alleging negligence and wilful and wanton misconduct. Plaintiff contended that the franchisor was aware minors operated the slicing machine against State and Federal child labor laws, and under the franchise agreement, the franchisor could prevent that activity by terminating the franchise agreement. At trial, the franchisor was granted a directed verdict and plaintiff appealed. The reviewing court noted that the franchisor did not have day-to-day supervisory control, could not hire or fire employees, could not give orders to the employees, and could not immediately stop the work in the restaurant. The court affirmed the directed verdict in the franchisor's favor finding, in part, that the franchisor's right to terminate the agreement was insufficient to establish liability.

■ Similarly, in this case, plaintiff relies on a provision in the lease that allowed defendant to terminate the lease. Under *Coty*, this was insufficient to impose liability for a violation of the Child Labor Law. Plaintiff in this case did not present evidence that defendant had control over the meat market to discover plaintiff's illegal employment and terminate it. The evidence presented established that defendant had no ownership interest in the meat market and was not involved in its operation. Although defendant may have had the power to terminate the lease, he had no power over the meat market to terminate plaintiff's employment. Therefore, summary judgment in defendant's favor on count VI was proper.

Affirmed.

MURRAY and GORDON, JJ., concur.