(No. 82-CC-1506–)

PAL-MAR STEEL CORP., Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed September 30, 1991.*

QUERRY & HARROW, LTD. (G. A. FINCH and PAUL LIVELY, of counsel), for Claimant.

ROLAND W. BURRIS, Attorney General (ERIN M. O'CONNELL and BRUCE BONCZYK, Assistant Attorneys General, of counsel), for Respondent.

## OPINION

Raucci, J.

Claimant, Wil-Fred Construction Company, Inc., as a successor in ownership of the original claimant, Pal-Mar Steel Corporation, brings this claim for the recovery of monies alleged to be owed it by the Capital Development Board (CDB) for work done in 1978 and 1979. There is little dispute about the significant facts in this claim. The State has chosen not to file a brief and argument in this matter and, therefore, cites no law in response to the Claimant's position.

In October of 1977, CDB entered into a contract with Arrow Construction Company to build the Addison Specialized Living Center in Addison, Illinois. In December of 1977, Arrow, as general contractor, entered into a subcontract with Claimant, Pal-Mar, for the steel erection work at the Specialized Living Center. Pal-Mar performed the work under the contract with Arrow. That work was completed by December 1979. Pal-Mar initially worked under the supervision of Arrow and later under the direction of the general contractor which CDB hired when Arrow experienced financial difficulties. Pal-Mar received partial payment in the amount of $172,800.00 and claims a balance of $113,278.77. There is no issue that Pal-Mar's work was in any way deficient. In 1980, when Pal-Mar became aware of Arrow's financial problems, it filed liens against the State for the work which it had done.

It is also undisputed that the labor and material bond purportedly issued by the Union Pacific Insurance Company to Arrow and accepted by the State was, in fact, forged.[1] Therefore, when Arrow became unable to

---

[1] After a trial in Du Page County Circuit Court, Union Pacific was found to have no obligation under the purported bond.

meet its financial obligations to the Claimant, there was no bonding company from which the Claimant could recover.

CDB requires that each construction contract be accompanied by a labor and material bond for the benefit of the subcontractors. Further, Illinois law requires State public construction contracts to have labor and material bonds from sureties for the benefit of subcontractors. (Ill. Rev. Stat., ch. 29, par. 15—16.) According to the evidence presented, the contractors and subcontractors who do business with the State are aware of the bonding requirement and rely upon that bonding requirement in their contractual dealings with the State. In this particular situation, that fact is highlighted by the continued work done by the Claimant after the financial difficulties of Arrow occurred and a new general contractor was hired. The Claimant continued to perform work after Arrow was replaced and after the bond forgery was made known to the State. The Claimant was not made aware of the bond forgery while it continued its work. The Claimant even completed certain extras that were required by the State of Illinois believing it was protected by the bond.

Over $4 million in total appropriations were set aside for the Specialized Living Center in Addison, Illinois. As of March of 1980, there were substantial monies being held by CDB pursuant to the liens filed by the Claimant, Pal-Mar. Those monies were subsequently disbursed to the new general contractor in spite of the existence of the lien. The issue with which this Court is confronted is whether the subcontractor can recover from the State where a general contractor has failed to secure a valid labor and material bond and subsequently is unable to meet its financial obligations in spite of the fact that it was paid by the State.

The Claimant has suggested three separate theories of recovery which would compel payment by the State under these circumstances. It is not necessary to discuss in detail each of these theories since agreement with the Claimant on any of those would justify an award in its favor.

The general rule with respect to third-party beneficiary actions in Illinois is well settled. If a contract is entered into for a direct benefit of a third person, not a party to the contract, such third person may sue for breach thereof. The test is whether the benefit to the third person is direct or incidental. As long as the benefit is direct, that individual may sue on the contract. (*Western Waterproofing Co. v. Springfield Housing Authority* (1987), 669 F. Supp. 901.) A contract to procure a payment bond is specifically written to protect the subcontractor and therefore the benefit is obviously direct. The Claimant was the direct beneficiary of the bond requirement in this contract and, as such, is entitled to recover from the State for the breach of the contract.

Additionally, Pal-Mar filed a valid notice of lien on March 31, 1980, in the amount of $113,278.77. In spite of the lien, CDB subsequently disbursed $115,000.00 to the substitute general contractor from funds which were available on the date of the lien being filed. This action is in violation of the Public Lien Act and obviously worked to the detriment of the Claimant. CDB should have withheld those funds until a final determination of the Claimant's lien was made.

It is therefore ordered, adjudged and decreed that Claimant is awarded $113,278.77 in full and complete satisfaction of this claim.