DONNA MARIE MORGAN, Plaintiff-Appellant, v. 253 EAST DELAWARE CONDOMINIUM ASSOCIATION *et al.*, Defendants-Appellees (M.A. Snyder and Associates, Defendant).[1]

First District (1st Division) No. 1—90—0472

Opinion filed May 18, 1992.

---

[1]The notice of appeal inadvertently transposed the name of a defendant who is not a party on this appeal with the name of a defendant/appellee who is a party. To correct this error, we have changed the names on the face of the opinion to reflect the actual parties to the appeal as shown in the record below and the briefs.

Orner, Wasserman & Moore, Ltd., of Chicago, for appellant.

Jobin & Flynn, of Chicago, for appellee 253 East Delaware Condominium Association.

JUSTICE MANNING delivered the opinion of the court:

Plaintiff-appellant Donna Marie Morgan (hereafter Morgan) brought a four-count complaint against defendant-appellee 253 East Delaware Condominium Association, the building owner (hereafter Delaware); defendant-appellee Joseph Moss Realty, Inc., the building manager (hereafter Moss); and defendant M.A. Snyder & Associates, the leasing agent, for personal injuries sustained when Morgan was assaulted, battered and robbed at gunpoint by an unknown third person in a common area of the premises. Counts I and II of the complaint, sounding in negligence, were filed against Delaware and Moss, respectively. Counts III and IV were filed against Snyder and alleged breach of warranty and consumer fraud violations.

The trial court granted summary judgment in favor of Delaware and Moss on the negligence counts, finding that there was no genuine issue of material fact and that they were entitled to judgment as a matter of law. It is from that judgment Morgan appeals. The rulings with respect to counts III and IV have not been appealed; neither is defendant Snyder a party to this appeal.

The facts are summarized as follows. Plaintiff resided in an apartment in a building owned by Delaware and managed by Moss. On September 18, 1986, at about 8:30 p.m. Morgan walked from her class at Loyola University's downtown campus to the building where she entered the lobby, checked her mail and entered the elevator at the lobby. The assailant, whom Morgan observed talking to the doorman when she first entered the building and as she checked her mail, although she did not hear the conversation between the two men, followed her onto the elevator.

When the elevator arrived at the tenth floor, the assailant poked a gun in Morgan's back, forced her off the elevator and into the stairwell. He then pushed Morgan down to the ninth-floor landing and robbed and beat her in the face with the gun causing severe injuries.

In the complaint, Morgan alleged that Delaware and Moss were negligent for failing to protect her from the criminal acts of an unknown third party because they voluntarily undertook to provide security but performed in a negligent manner. They filed an answer and amended answer to the complaint denying any allegations of negligence.

Delaware and Moss then filed a motion for summary judgment asserting that they owed no duty to protect Morgan from the criminal acts of an unknown third party. Even so, there was no proximate cause between any alleged negligent act or omission by them and Morgan's injury.

On June 28, 1989, the trial court heard and granted Delaware and Moss' motion for summary judgment, without comment on the specific basis for the ruling. However, the court had before it affidavits, discovery depositions, and memoranda in support and opposition to the motion. Similarly, the hearing on Morgan's motion for reconsideration was held and the motion denied wthout comment by the trial court on January 18, 1990. Morgan has timely filed a notice of appeal from the June 28, 1989, order. *Ferguson v. Riverside Medical Center* (1985), 111 Ill. 2d 436, 442, 490 N.E.2d 1252.

On appeal, Morgan first contends the trial court erred in granting the motion for summary judgment, by implicitly finding, as a matter of law, that Delaware and Moss did not owe her any duty for injuries caused by the criminal acts of a third party. She urges that Delaware and Moss voluntarily undertook certain measures to provide security for the benefit of the residents of the building. She further argues that a duty on the part of the landlord to protect tenants and occupants of the building arose out of the voluntary undertaking to protect and that Delaware and Moss negligently performed such under-

taking proximately causing her injuries and damages. (*Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, 399 N.E.2d 596.) Morgan asserts that Illinois recognizes two bases to impose liability on a landlord for harm done by a criminal and that the second basis, which involves action on the landlord's part that materially increases the risk of criminal activity, applies here. (*Duncavage v. Allen* (1986), 147 Ill. App. 3d 88, 497 N.E.2d 433.) Minimally, Morgan contends it is a material question of fact whether Delaware and Moss performed their voluntary undertaking to protect in a nonnegligent manner.

 As a general rule, Illinois does not impose a duty to protect others from criminal attacks by third persons; however, an exception is recognized where the criminal attack was reasonably foreseeable and the parties had a special relationship such as carrier-passenger, innkeeper-guest, business inviter-invitee, or voluntary custodian-protectee. (*Figueroa v. Evangelical Covenant Church* (7th Cir. 1989), 879 F.2d 1427; *Rowe v. State Bank of Lombard* (1988), 125 Ill. 2d 203, 531 N.E.2d 1358.) The landlord-tenant relationship is not the sort of "special relationship" which renders the landlord responsible and liable for criminal acts of a third person. Thus, the general rule is that at common law, a landlord did not owe a tenant or social guest a duty to protect the tenant or guest from criminal acts. (*Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, 399 N.E.2d 596; *Carrigan v. New World Enterprises, Ltd.* (1983), 112 Ill. App. 3d 970, 446 N.E.2d 265.) This rule is based upon the principle that the landlord is not an insurer and cannot be held liable to the tenant for harm done by every criminal intruder. *Duncavage v. Allen*, 147 Ill. App. 3d 88.

██ However, our supreme court has determined that liability will be imposed on a landlord who voluntarily undertakes to provide security measures, but performs the undertaking negligently, if the negligence is the proximate cause of the injury to the plaintiff. (*Phillips v. Chicago Housing Authority* (1982), 89 Ill. 2d 122, 431 N.E.2d 1038.) It is generally recognized that to state a legally sufficient claim for negligence, plaintiff must allege the existence of a duty owed by defendant to plaintiff, breach of that duty, and injury proximately caused by that breach. (*McLane v. Russell* (1989), 131 Ill. 2d 509, 546 N.E.2d 499.) Thus, a negligence complaint against a landlord must set forth the existence of a duty owed by the landlord to the tenant, breach of that duty and an injury resulting from the breach. (*Rabel v. Illinois Wesleyan University* (1987), 161 Ill. App. 3d 348, 514 N.E.2d 552.) However, if the owner assumes a duty to protect tenants against some criminal acts of third parties, its duty is limited by the extent of the undertaking and the injuries sustained must be reasonably fore-

seeable. *Rowe v. State Bank* (1988), 125 Ill. 2d 203.

■ Whether there exists any legal duty owed by defendant to the plaintiff who seeks to bring a negligence action must be determined by the courts as a matter of law. (*Wimmer v. Koenigseder* (1985), 108 Ill. 2d 435, 484 N.E.2d 1088.) Stated another way, Illinois law mandates that the determination of whether defendant and plaintiff stand in such a relationship to one another that the law imposes upon defendant the obligation of reasonable conduct for the benefit of the plaintiff is a question of law (*Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 513 N.E.2d 387), and such question is properly addressed by the court on a motion for summary judgment. *Laco v. City of Chicago* (1987), 154 Ill. App. 3d 498, 507 N.E.2d 64.

■ Based upon the foregoing principles of law, we find that a review of the facts of this case supports the trial court's grant of summary judgment on behalf of defendants on the ground that, as a matter of law, there was no legal duty owed by defendants to Morgan to protect her from the criminal acts of third persons. Because there was no special relationship between Delaware, Moss and Morgan here, defendants were under no legal duty to protect Morgan from the criminal acts of the assailant.

Even assuming *arguendo* that Delaware and Moss did voluntarily undertake certain security precautions, any duty which arises out of that undertaking is limited by the extent of the undertaking. (*Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 74, 199 N.E.2d 769.) A review of the complaint and other pleadings, depositions and affidavits in the record below reveals that defendants did undertake to secure the building. However, the extent of that undertaking was limited to screening of guests; there was no security force or private police, nor was there an undertaking by defendants to become absolute insurers for harm done to tenants by criminal attacks of third persons.

Specifically, the extent of the undertaking here involved providing a doorman to stop all visitors to the building and to make sure that a tenant authorized the visitors' entry, which was done in the instant case. The doorman, Gillespie, testified that Morgan was at the mailboxes when the purported assailant entered the lobby through the revolving door and approached the desk. Gillespie noticed nothing unusual about the man and inquired of him, "Excuse me, can I help you?" to which the man responded "Unit 13G." Gillespie then turned and using the in-house phone system told the tenant in 13G that his guest was downstairs, and the tenant in 13G said "Let him up." Gil-

lespie also testified that he knew the tenant in unit 13G, whose name was Daniel Mueller, that he recognized Mueller on the phone from previous conversations and that Mueller had told Gillespie earlier that evening he was expecting guests. Gillespie further stated that prior to this incident, he was unaware of any incidents involving robbery, beatings, mugging or vandalism in the building.

Additionally, Morgan's own testimony revealed that she observed the doorman talking to the assailant minutes before he entered the elevator with her. She also corroborates Gillespie's testimony and that of the engineer, Mr. Gliebe, who was in the lobby during this time, that the doorman was on the phone. There was no testimony that anyone else was in the lobby during this time. Morgan also stated that when she first spoke with Ms. Stewart at the leasing agent's office, she was assured that the neighborhood was safe and that the building had security, including a 24-hour doorman on duty in the lobby. There was also testimony that all the doors in the building remained locked except the front door entrance, which was locked from 10 p.m. until 7 a.m.

Furthermore, the facts show that the proximate cause of Morgan's injuries was the independent intervening criminal acts of the assailant, rather than a condition created by Delaware and Moss, such as providing a doorman. The evidence reflects that defendants took measures to decrease the risk of criminal activity by providing a 24-hour doorman and a system whereby any nontenant or unauthorized person entering the building first had to be cleared for entry into the building by a tenant. As stated, the record reflects that Mr. Gillespie followed the building procedures by inquiring of the presumed assailant the tenant he was there to see and by using the in-house phone system to inform the tenant in that apartment that his guest had arrived.

The housing authority's voluntary undertaking in *Pippin* (78 Ill. 2d 204, 399 N.E.2d 596) was to hire a security firm to provide guard services for its building, and in *Phillips* (89 Ill. 2d 123, 431 N.E.2d 1038), the housing authority also had voluntarily undertaken steps to close off and secure certain floors to prevent the commission of crimes thereon. In each one of the cases, our supreme court viewed the query as whether the defendants had performed their undertaking in a negligent manner. Having already answered that query in the negative here, we hold that the trial court's grant of summary judgment in favor of Delaware and Moss was proper.

Morgan also contends that the trial court erred when it granted the summary judgment because the defendants' amended answer,

wherein Delaware and Moss denied certain factual allegations that had been purportedly admitted in the original answer, presented contradictory admissions and inconsistent pleadings before the trial court sufficient to defeat the summary judgment motion. We hold that the amendment of the answer in question here is irrelevant to the disposition of the summary judgment motion. The portion of the answer that was amended concerns a question of duty, which is a matter of law for the court, and not the jury. *Bence v. Crawford Savings & Loan Association* (1980), 80 Ill. App. 3d 491, 400 N.E.2d 39.

For the reasons given, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

BUCKLEY, P.J., and O'CONNOR, J., concur.