CALVIN JACKSON, Plaintiff-Appellant, v. SHELL OIL COMPANY, Defendant-Appellee.

First District (2nd Division) No. 1—94—2064

Opinion filed May 16, 1995.

A. Boddie, of Chicago, for appellant.

Knight, Hoppe, Fanning & Knight, Ltd., of Des Plaines (Patrick J. Fanning and Colleen C. Coburn, of counsel), for appellee.

JUSTICE DiVITO delivered the opinion of the court:

In this premises liability action against defendant Shell Oil Company (Shell Oil), plaintiff Calvin Jackson (Jackson) sought damages for personal injuries suffered as a result of a gunshot wound inflicted by an unknown assailant. At the time of his injury, Jackson was acting within the scope of his employment as a gas station attendant on the premises which were being leased to his employer by Shell Oil. The circuit court dismissed Jackson's first amended com-

plaint pursuant to section 2—619 of the Illinois Code of Civil Procedure (735 ILCS 5/2—619 (West 1992)) on the basis of its finding that there was no special relationship between Shell Oil and Jackson as alleged in the complaint. Jackson now appeals the dismissal of his complaint. For reasons that follow, we affirm.

At approximately 4:20 a.m. on July 23, 1993, Jackson was shot and wounded by an unknown assailant. At the time of the shooting, Jackson was working and in the scope of his employment as a service station attendant for Frank Curry and Curry's company, June Way, Inc. (June Way). Just prior to the shooting, Jackson had left the service station attendant's booth to use the rest room, because the booth did not have such a facility.

Shell Oil was neither the owner of the service station nor in the possession or control of the service station at the time of the shooting. Jackson was not employed by Shell Oil at the time of the shooting, nor has he ever been employed by Shell Oil.

Frank Curry was an authorized Shell dealer, operating a gasoline service station at 7740 N. Sheridan Road in Chicago known as June Way Shell pursuant to a motor fuel station lease and a dealer agreement with Shell Oil. The premises of the service station were wholly demised to Curry under the lease agreement, in effect from January 1, 1991, through December 31, 1995. Shell did not own the leased real estate; it leased that property and in turn leased it to Curry.

The leased premises included the land, buildings, improvements, and equipment. The lease further provided that upon termination or expiration of the lease, the lessee shall surrender possession of the leased premises in good condition. Under the terms of the lease, Shell Oil as lessor was specifically prohibited from exercising control over or directing Curry, the lessee's business, or any person performing lessee's duties. While the dealer agreement set forth the standards and requirements for preserving the public's confidence in and acceptance of Shell Oil's products, Curry was an independent businessman and Shell Oil had no right to control or direct his business.

Under the dealer agreement, Curry was expressly responsible for maintenance and safety conditions. No separate agreement was in effect between Shell Oil and Curry which imposed any responsibility on Shell Oil for the maintenance, housekeeping, or safety of the leased premises. Further, Shell Oil had no knowledge of anyone ever being shot at the leased premises except for the incident complained of by Jackson.

The lease required Curry to operate the service station 24 hours a day. The lease stated that Shell Oil has

"the right from time to time, without liability to lessee, to make alterations to the Premises. Shell's right to make such alterations shall include, but not be limited to, modernization, reconstruction or remodeling of or adding to any building, equipment or other facilities on the Premises, and may involve the complete demolition and rebuilding of any and all such facilities."

Curry could not "make any alterations to the Premises *** without Shell's prior written consent, which consent shall not be unreasonably withheld." The lease granted Shell Oil the right to "enter the Premises at any time for the purpose of inspecting the same (including the pump meters), gauging and testing tanks, performing maintenance and making alterations," and required Curry to maintain "bullet-resistant glass or plastic." The lease also provided Shell Oil the option to terminate the lease on the ground of "failure by Lessee to comply with any provision of this Lease."

On July 29, 1993, Shell Oil displayed a sign in public view on the window of the attendant's booth which stated: "REWARD. Shell Oil Company may contribute up to $20,000 as a reward for information leading to the arrest and conviction of any individual committing a violent crime against personnel of this station."

Jackson filed a premises liability action against Shell Oil, June Way, and Curry on December 3, 1993, alleging negligence in failing to maintain the business premises in a reasonably safe condition. He voluntarily dismissed both June Way and Curry pursuant to a stipulation and agreement with those defendants on April 28, 1994. In response to the complaint, Shell Oil filed a motion to dismiss pursuant to section 2—619 of the Illinois Code of Civil Procedure (735 ILCS 5/2—619 (West 1992)). Instead of responding to the motion to dismiss, Jackson filed a first amended complaint on May 2, 1994. The first amended complaint was a premises liability action against Shell Oil only, alleging negligence with regard to the following:

"(a) failing to maintain the Premises in a reasonably safe condition for use by the PLAINTIFF.

(b) failing to protect PLAINTIFF from an unsafe condition on the Premises which was known to SHELL and not known to PLAINTIFF.

(c) failing to protect PLAINTIFF from an unsafe condition on the Premises which was known to SHELL and which SHELL knew or should have expected that PLAINTIFF would fail to protect himself against it.

(d) failing to protect PLAINTIFF from an unsafe condition on the Premises which was known to SHELL and which SHELL knew or should have known that PLAINTIFF would fail to protect himself against it.

(e) failing to protect PLAINTIFF from an unsafe condition on the Premises which was known to SHELL and which SHELL knew or should have known that PLAINTIFF would be unable to protect himself against it.

(f) failing to warn PLAINTIFF of an unsafe condition on the Premises which was known to SHELL and which was not open and obvious to PLAINTIFF.

(g) failing to employ security guards."

In response to the first amended complaint, Shell Oil adopted its motion to dismiss the original complaint and reasserted the arguments set forth therein. After hearing oral argument on May 24, 1994, the circuit court granted the motion to dismiss and gave Jackson leave to file a second amended complaint. Rather than doing so, however, Jackson filed a timely notice of appeal on June 22, 1994. Jackson and Shell Oil are the only parties to the appeal.

When a party appeals from a circuit court's order granting a section 2—619 motion to dismiss, this court conducts a *de novo* review. (*Owens v. Midwest Tank & Manufacturing Co.* (1989), 192 Ill. App. 3d 1039, 1042, 549 N.E.2d 774, 776, *appeal denied* (1990), 131 Ill. 2d 560, 553 N.E.2d 397.) Jackson's complaint should not have been dismissed unless it was clear from the pleadings that no set of facts could have been proved which would have entitled him to relief. *Owens*, 192 Ill. App. 3d at 1042, 549 N.E.2d at 776.

Jackson asserts that, pursuant to section 2 of the Illinois Premises Liability Act (740 ILCS 130/2 (West 1992)), the common-law distinction between invitees and licensees in regard to the duty of care owed by a landowner or occupier was abolished and replaced by a duty of reasonable care under the circumstances regarding the state of the premises or acts done on them. He argues that the duty of a premises owner or occupier encompasses a duty to invitees on the premises to exercise reasonable care for their protection against injury arising out of the criminal activities of third parties. He further argues that the key inquiry as to whether such a duty exists is whether, under the particular circumstances of the case, the third-party criminal acts were reasonably foreseeable. In this case, according to Jackson, Shell Oil voluntarily undertook to provide a secure service station attendant's booth in which Jackson (or anyone in his position) would work. Further, according to Jackson, Shell Oil retained control over the design and construction of any alterations to the booth. Consequently, Jackson argues that Shell Oil had a duty to use ordinary care in maintaining the booth in a reasonably safe condition. But for Shell Oil's negligent failure to design or construct the booth with adequate rest room facilities, it would not have been

necessary for Jackson to leave the secure booth and expose himself to the harm of a third party's criminal acts.

Shell Oil responds that the motor fuel station lease and dealer agreement clearly indicate that it assumed neither obligation nor responsibility for providing safety or security to employees of the lessee. It argues that it therefore had no duty to guard against the criminal acts of third persons. It further argues that any liability that might arise from its voluntary undertaking to provide a secure booth is limited by the extent of that undertaking, and since there is no evidence in the record that the booth was not secure in and of itself, and because Jackson was not shot while in the booth, it has no liability as a matter of law.

■ As a general rule, Illinois does not impose a duty to protect others from criminal acts by third persons; however, an exception is recognized where the parties had a special relationship and where the criminal attack was reasonably foreseeable. (*Morgan v. 253 East Delaware Condominium Association* (1992), 231 Ill. App. 3d 208, 211, 595 N.E.2d 36, 38.) The exception to the general no-duty rule therefore requires the establishment of two elements: first, there must be a special relationship between the parties; and, second, the criminal act must have been reasonably foreseeable. If either of the required elements was not established in this case, the circuit court was correct in its dismissal of Jackson's first amended complaint. If, on the other hand, both elements were established, the circuit court was in error.

■ As regards the second element, foreseeability, Jackson established in the circuit court that Shell Oil posted a notice on the premises indicating it would pay a reward of up to $20,000 "for information leading to the arrest and conviction of any individual committing a violent crime against personnel of this station." Despite Shell Oil's unsupported assertion that the posting of such a notice does not satisfy the legal requirement of reasonable foreseeability, and the information contained in an affidavit that Shell Oil had no notice of any prior shooting or other criminal activity at this service station, it is reasonably foreseeable that a service station will be robbed and that in the commission of such a robbery an attendant might be harmed. It is disingenuous of Shell Oil to claim that because it had no information that this particular station had ever been robbed before it was not reasonably foreseeable that it would be robbed at some time. Further, there is no reason for Shell Oil to have posted a sign promising a reward if a violent crime is perpetrated against station personnel if it is not reasonably foreseeable that such a violent crime might be committed. We find that Jackson's injury was reasonably foreseeable.

■ As regards the first element, however, a lessor is not liable for injuries caused by a dangerous or defective condition on the premises leased to a tenant and under the tenant's control. (*Rowe v. State Bank* (1988), 125 Ill. 2d 203, 220-21, 531 N.E.2d 1358, 1366; *Almendarez v. Keller* (1990), 207 Ill. App. 3d 756, 759, 566 N.E.2d 441, 444, *appeal denied* (1991), 137 Ill. 2d 663, 571 N.E.2d 146.) As our supreme court put it in *Wright v. Mr. Quick, Inc.* (1985), 109 Ill. 2d 236, 238, 486 N.E.2d 908, 909: "The basic rationale for lessor immunity has been that the lease is a conveyance of property which ends the lessor's control over the premises, a prerequisite to the imposition of tort liability." A lessor has no duty to maintain premises that are leased to and under the control of the tenant. *Gilbreath v. Greenwalt* (1980), 88 Ill. App. 3d 308, 309, 410 N.E.2d 539, 541.

■ Under the terms of the motor fuel station lease in effect between Shell Oil and Curry at the time of the occurrence which is the subject of this suit, Shell Oil was specifically prohibited from exercising control over or directing Curry's business, or any person performing Curry's duties:

> "Nothing in this lease shall be construed as reserving to Shell any right to exercise any control over, or to direct in any respect the conduct or management of, the business or operations of lessee on the premises; but the entire control and direction of such business and operation shall be and remain in lessee, subject only to lessee's performance of the obligations of this lease."

The express language of the lease agreement is consistent with the case law, which holds that a lessor is not liable for injuries caused by a dangerous condition on the premises leased to a tenant and under the tenant's control. (*Almendarez*, 207 Ill. App. 3d at 759, 566 N.E.2d at 444.) Curry was expressly responsible for maintenance and safety conditions under the dealer agreement.

Jackson's attempt to characterize his relationship with Shell Oil as one of business inviter-invitee is not persuasive. A business invitee has been defined as one who enters the land of another by express or implied invitation, in connection with the other's business or activities, with resulting mutual benefit to the owner and the invitee. (*B.C. v. J.C. Penney Co.* (1990), 205 Ill. App. 3d 5, 9, 562 N.E.2d 533, 535, *appeal denied* (1991), 136 Ill. 2d 541, 567 N.E.2d 328.) Here, Jackson was Curry's employee, not Shell Oil's employee, and he was on the premises with the consent of Curry, not the consent of Shell Oil.

Jackson's failure to establish a business inviter-invitee relationship with Shell Oil is fatal to his case. The Illinois Supreme Court has repeatedly held that the simple relationship between a landlord and tenant, and a landlord and those on the premises with the

tenant's consent, is not a special relationship that might give rise to a duty to protect against the criminal acts of others. (*Rowe*, 125 Ill. 2d at 216, 531 N.E.2d at 1364; *Phillips v. Chicago Housing Authority* (1982), 89 Ill. 2d 122, 126, 431 N.E.2d 1038, 1040; *Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, 208, 399 N.E.2d 596, 598.) This rule is based upon the principle that the landlord is not an insurer and cannot be held liable to the tenant for harm done by every criminal intruder. *Morgan*, 231 Ill. App. 3d at 211, 595 N.E.2d at 38.

The appellate court has made this determination many times. For example, in *Beck v. Rossi Brothers* (1984), 125 Ill. App. 3d 874, 466 N.E.2d 1124, a landlord was not liable to a tenant shot by a trespasser in a common area who gained access because of a faulty lock. In *Carrigan v. New World Enterprises, Ltd.* (1983), 112 Ill. App. 3d 970, 446 N.E.2d 265, a landlord was not liable to a tenant who was raped by an assailant who gained entry where a burglar alarm was inoperative. In *Morgan v. Dalton Management Co.* (1983), 117 Ill. App. 3d 815, 454 N.E.2d 57, a landlord was not liable to a tenant for acid thrown in the tenant's face by another tenant in a building elevator. In *Burks v. Madyun* (1982), 105 Ill. App. 3d 917, 435 N.E.2d 185, a mother was not liable to a babysitter assaulted in the mother's home while she was babysitting. In *Taylor v. Hocker* (1981), 101 Ill. App. 3d 639, 428 N.E.2d 662, a shopping mall owner was not liable to a customer assaulted and knifed in a parking lot. And in *Stelloh v. Cottage 83* (1964), 52 Ill. App. 2d 168, 201 N.E.2d 672, a landlord was not liable to a tenant assaulted and raped in her apartment.

■ As Jackson asserts, our supreme court has determined that liability may be imposed on a landlord who voluntarily undertakes to provide security measures, but performs the undertaking negligently, if the negligence is the proximate cause of the injury to the plaintiff. (*Phillips*, 89 Ill. 2d at 128-29, 431 N.E.2d at 1041.) Jackson asserts that Shell Oil is liable for the shooting because the service station attendant's booth was not equipped with a rest room. The purported security measure is the attendant's booth, and the alleged negligence is the failure to design the booth with a rest room. Thus, Jackson's claim is that Shell Oil should have installed a rest room in the attendant's booth so that he would not have to leave the booth to use the rest room. Shell Oil's failure to install a rest room, according to Jackson, was a proximate cause of his being shot.

Ignoring for the moment the factual and legal shortcomings of Jackson's claim, Illinois law is clear that if an owner assumes a duty to protect tenants against some criminal act of third parties, the duty is limited by the extent of the undertaking. (*Rowe*, 125 Ill. 2d at 218-

19, 531 N.E.2d at 1365; *Morgan*, 231 Ill. App. 3d at 211, 595 N.E.2d at 39.) Even assuming that Shell Oil did voluntarily undertake certain security precautions, any duty arising out of that undertaking is limited by the extent of the undertaking.

■ The undertaking alleged by Jackson cannot reasonably be construed as insurance of absolute protection against violent crime. In *Carrigan*, the mere fact that the premises contained a burglar alarm was not insurance against and could not guarantee that a crime would not be committed. (*Carrigan*, 112 Ill. App. 3d at 974, 446 N.E.2d at 267.) In *Stelloh*, the apartment complex owners had employed a private police force at the complex, but the court reasoned that even the police cannot stop all rapes and that it could not be expected that a landlord could do so by employing police. (*Stelloh*, 52 Ill. App. 2d at 171, 201 N.E.2d at 673.) In this case, the extent of Shell Oil's undertaking was limited to providing a secure booth for the service station attendant. Its liability must therefore be limited to that arising from any negligence in providing that booth that proximately caused Jackson's injury. There is no evidence in the record that the booth was not secure in and of itself. Jackson was not attacked while in the booth. Because Shell Oil did not undertake to become an absolute insurer for harm done to Jackson by the criminal attacks of third persons, it is not liable to him for the injuries suffered in such an attack.

The fact that the booth was not equipped with a rest room is not legally, logically, or factually related to any proximate cause of Jackson's injury. When all reasonable minds can reach but one conclusion as to the question of proximate cause, it is the duty of the circuit court to remove the matter from the consideration of the jury. (*Briske v. Burnham* (1942), 379 Ill. 193, 39 N.E.2d 976; *Vest v. City of Granite City* (1982), 106 Ill. App. 3d 36, 435 N.E.2d 755.) That is precisely what the circuit court did in this case by granting Shell Oil's section 2—619 motion, and for all of the reasons discussed above, we affirm the court's judgment.

Affirmed.

HARTMAN and McCORMICK, JJ., concur.