(No. 90-CC-0234)—

WILLIAM HAENDEL, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed April 22, 1996.*

*Order filed January 5, 1998.*

EDWARD F. DIEDRICH (JEAN M. DIEDRICH, of counsel), for Claimant.

JAMES E. RYAN, Attorney General (ROBERT J. SKLAMBERG, Assistant Attorney General, of counsel), for Respondent.

## OPINION ON MOTION TO DISMISS

EPSTEIN, J.

Claimant, a professor of sculpture at Northern Illinois University (the "University"), now retired, brought this two-count claim against the University seeking recovery for flood damage to his artwork which had been kept on University-leased premises. These claims, as alleged in Claimant's amended complaint, are before the Court on the Respondent University's motion to dismiss which, though undesignated, is a section 2—619 motion that asserts four affirmative bars to Claimant's tort (count I) and contract (count II) claims.

### 1. The Amended Complaint

Claimant alleges that in 1985 he was a member of the University's art department faculty, in which capacity he maintained his art studio and artwork in a building leased by the University for this and other art department

purposes, when the building flooded which caused $160,000 of damage to his artworks. Count I alleges that the University was negligent in its operation of the building and its alteration of the property. Count II, on a third-party beneficiary theory, alleges that the University breached the insurance covenant of its premises lease with the landowner which required it to procure insurance for, *inter alia*, property damage.

### 2. The Section 2—619 Motion to Dismiss

The university's section 2—619 motion raises four issues: (1) failure to exhaust remedies as required by section 25 of the Court of Claims Act (735 ILCS 505/25), seemingly directed at both counts; (2) lack of jurisdiction over the count II third-party beneficiary claim under section 8(b) of the Act (735 ILCS 505/8(b)) due to lack of privity between Claimant and the University on the premises lease; (3) the bar of the catch-all two-year statute of limitations of section 22(g) of the Act (735 ILCS 505/22(g)) as to the count I tort claim; and (4) the written agreement between the Claimant and the University that provided that the University was not to be responsible for Claimant's personal property, which is apparently asserted as a bar to both counts I and II.[1]

### 3. The Count I Negligence Claim

### (a) Assumption of Risk

Respondent's argument is based upon Claimant's execution of a "letter of agreement" with the University that included the following exculpatory language:

"4. NIU carries no insurance and cannot assume responsibility for personal materials or works of art." (letter of agreement, par. 4; departmental report, pp. 1-2.)

---

[1] Respondent's articulation in its motion of a failure "to state a cause of action in which relief may be granted" is plainly not the intended objection to the complaint, is not argued by the Respondent, and will be disregarded by the Court.

The applicable doctrine is assumption of risk, which is still a viable though limited tort defense in Illinois. Most commonly applied as a defense to products liability actions (see, e.g. *Hanlon v. Airco Industrial Gases* (1st Dist. 1991), 219 Ill. App. 3d 777, 579 N.E.2d 1136), assumption of risk remains applicable to negligence actions, at least in cases involving a contractual or employment relationship or, as here, an express assumption of risk. See *Barrett v. Fritz* (1969), 42 Ill.2d 529, 248 N.E.2d 529.

However, the Court cannot apply this express assumption of risk defense to this negligence claim because of a law that neither party mentions, but which we must nonetheless apply. Exculpatory clauses as to lessors' negligence have been outlawed in Illinois since 1971. (Lessor's Liability Act, section 1, Public Act 77-1569, 765 ILCS 705/1.) The General Assembly has voided agreements, like the one presented by this Respondent, which would have the effect of:

"exempting the lessor from liability for damages for injuries to person or property caused by or resulting from the negligence of the lessor, his or her agents, servants or employees, in the operation or maintenance of the demised premises * * *." Section 1, Lessor's Liability Act, 765 ILCS 705/1.

This statutory public policy is as applicable to the State as landlord as it is to a private landowner as landlord, as this Court has held. *Shalgos v. State* (1994), 46 Ill. Ct. Cl. 331 (lease of stable in State Fairgrounds to horse owner).

The exculpation of the "letter of agreement" clearly falls within the Act's operative language, quoted above, as to Claimant's personal property. The operation of the exculpatory clause against count I—a negligence action relating to the operation or maintenance of the premises—is clearly barred if the statute applies to this agreement. Whether this "letter of agreement" is covered by the Act, in turn, is determined by the following language of section 1, which establishes the statute's reach:

"every covenant, agreement or understanding in or in connection with or collateral to any lease of real property * * *."

Under this statutory language it is not necessary for us to determine whether or not the "letter of agreement" itself constituted a lease or sublease. It is sufficient for present purposes that we find, as we do, that the letter of agreement would apply "in connection with" (or at least "collateral to") whatever oral or written lease governed Claimant's occupancy of the University's premises.

Accordingly, the exculpatory clause of this agreement is "void as against public policy and wholly unenforceable" and is not a bar to the count I negligence claim. This aspect of the Respondent's motion to dismiss is denied, with prejudice.

(b)  Statute of Limitations

The parties do not dispute that the two-year period of section 22(g) of our Act (735 ILCS 505/22(g)) is the applicable limitation period for this negligence action. Its application here is disputed.

Respondent asserts, correctly, that the Claimant admits he knew of the flood of the premises within the two-year limitation period. This, however, is not dispositive. Claimant asserts the discovery rule applicable to statutes of limitations in Illinois (*Vogt v. Bartelsmeyer* (5th Dist. 1994), 264 Ill. App. 3d 165, 636 N.E.2d 1185), and asserts that he in fact did not know and, under the particular circumstances, could not reasonably have discovered the *actual damage* to his artwork until some days after the flood, within the two-year period. Claimant's contention, if accepted, would commence the running of the statute within two years prior to his filing in this Court, which would avoid the bar of the statute.

The Respondent relies factually on the Claimant's deposition testimony to support this aspect of its section 2—619 motion. Claimant, in turn, disputes Respondent's reading of his testimony and has filed an affidavit which, *inter alia*, reviews his discovery of the damage to his artworks that were stored in his studio and in a loading area of the building. (Affidavit of William Haendel, 9/8/95; Exhibit A to Claimant's response to Respondent's motion to dismiss, par. 3(A)-(E).)

Claimant's deposition testimony is inadequate to support Respondent's conclusions about Claimant's actual or inferred knowledge of injury to his artwork. Claimant's admission that he knew of the flood and knew that it had reached his studio (more than two years before filing) does not quite reach the critical facts. Moreover, in light of Claimant's affidavit, which flatly denies knowledge of the injury and states that he was denied access to the area and was prevented from examining his artwork until a later date (within the two-year statute), the most that can be said is that the issue, tritely put, of what Claimant knew and when he knew it must be resolved by a trier of fact.[2] This presents a fact issue as to the discovery rule's application in this case.

Accordingly, this aspect of Respondent's motion to dismiss is denied without prejudice and subject to trial.

(c) Exhaustion of Remedies

Respondent's exhaustion of remedies argument is based on the Claimant's failure to pursue two alternate sources of potential recovery for the damage to his artwork: (1) Claimant's abandonment of his lawsuit against the landlord of the University-leased building, and (2) his

---

[2] The Court also leaves for later determination, on a better record than is presented on this motion, the question of what kind or degree of damage to the artwork must have been known to trigger the running of the statute of limitations under the discovery rule.

failure to seek damages from the designer of the retaining wall that the University built on the property and that may have caused the flood by channeling rainwater runoff into the building.

Respondent's exhaustion arguments require that the Claimant have (or had) a plausible claim against the suggested alternative source of recovery. If an alternative source of recovery for the claimed injury is shown to exist, in whole or in part, our Act and our rule command that no judgment can be entered by this Court until that potential recovery is resolved and reduces the State's liability. (735 ILCS 505/25, 74 Ill. Admin. Code section 790.60) If it is shown that the Claimant could have but now cannot pursue a real alternative source of recovery for the injury, then this Court will dismiss the claim against the State for failure to exhaust that remedy.

Respondent urges that Claimant's 1992 dismissal of his circuit court lawsuit against the landlord demonstrates a failure to pursue an alternative remedy (and one which, presumably, cannot now be pursued due to the apparent running of the statute of limitations), and requires us to dismiss these claims against the University. Claimant responds that the landlord's deposition testimony disclosed that the University, as a tenant, had the sole and exclusive responsibility for operation and maintenance of the property under the lease and that therefore, as a matter of law, the landlord cannot be culpable for either of the negligent acts alleged in this case: the design of the retaining wall that allegedly funneled rainwater into the building, and the failure to turn on, or keep on, the sump pumps that would have protected the lower level of the building from floodwaters.

As with Respondent's earlier reliance on the Claimant's deposition (on the limitation issue), the Claimant's

reliance on the landlord's deposition (on this issue) is misplaced. The landlord's deposition testimony says what Claimant says it says, to be sure. However, he was wrong, and thus, Claimant winds up being wrong too. Unlike the Claimant (and apparently unlike the Respondent as well), the Court read the lease. And contrary to the landlord's testimony that the lease delegated the *entire* responsibility for maintenance and operation of the leased premises to the tenant University, the lease in fact contains an allocation of maintenance and improvement responsibilities between the landlord and the University:

> "VIII. REPAIRS AND MAINTENANCE
>
> The Lessee * * * shall maintain and keep the Premises, including * * * windows, doors, skylights, interior walls and air conditioning systems in good repair. The Lessor shall maintain the structural system of the Building * * * except the windows, and the sidewalks on the Premises in good condition and repair. The Lessee shall be responsible for the maintenance of the grounds and snow removal. All necessary caulking, tuckpointing and other maintenance of the exterior walls shall be the Lessor's responsibility * * *.
>
> IX. ALTERATIONS AND INSTALLATIONS
>
> The Lessee shall not make any alterations in or additions * * * without first procuring the Lessor's written consent and delivering to Lessor the plans, specifications, names and addresses of the contractors, copies of the proposed contracts and the necessary permits, * * * satisfactory to the Lessor * * *." (Lease, sections VIII, IX (contained in departmental report).)

In this posture, the Claimant cannot invoke the general rule of law that a leasehold transfer of the entirety of the responsibility and control of the premises to the tenant exculpates the landlord from liability for the condition of the premises. This rule applies when the lease transfers the entire control and responsibility of the property:

> "Generally, a landlord is not liable for injuries caused by a defective condition on the premises leased to a tenant *and under the tenant's control*. (*Rowe v. State Bank of Lombard* (1988), 125 Ill. 2d 203, 126 Ill. Dec. 519, 531 N.E.2d 1358.) A lease is a conveyance of property ending the landlord's control over the leased premises, which is a prerequisite to tort liability. (*Wright v. Mr. Quick, Inc.* (1985), 109 Ill. 2d 236, 93 Ill. Dec. 375, 486 N.E.2d 908.) Only the tenant, as the party *in possession and control* of the leased premises, could be liable to persons injured on the premises. (*Wright* [citation omitted].)" *Almendarez v. Keller* (1st Dist. 1990), 207 Ill. App. 3d 756,

556 N.E.2d 441, 444, 152 Ill. Dec. 754, 757, *leave to appeal den'd.*, 137 Ill. 2d 663 (1991) (emph. added)

"* * * a lessor is not liable for injuries caused by a dangerous or defective condition on the premises leased to a tenant *and under the tenant's control.* (*Rowe v. State Bank* (1988), 125 Ill. 2d 203, 220-21, 126 Ill. Dec. 519, 527, 531 N.E.2d 1358, 1366; *Almendarez v. Keller* (1990), 207 Ill. App. 3d 756, 759, 152 Ill. Dec. 754, 757, 556 N.E.2d 441, 444, *appeal denied* (1991), 137 Ill. 2d 663, 156 Ill. Dec. 559, 571 N.E.2d 146.) As our supreme court put it in *Wright v. Mr. Quick, Inc.* (1985), 109 Ill. 2d 236, 238, 93 Ill. Dec. 375, 376, 377, 486 N.E.2d 908, 909: "The basic rationale for lessor immunity has been that the lease is a conveyance of property *which ends the lessor's control over the premises*, a prerequisite to the imposition of tort liability." A lessor has no duty to maintain premises that are leased to *and under the control of the tenant. Gilbreath v. Greenwalt* (1980), 88 Ill. App. 3d 308, 309, 43 Ill. Dec. 539, 541, 410 N.E.2d 539, 541." *Jackson v. Shell Oil Co.* (1st Dist. 1995), 272 Ill. App. 3d 542, 208 Ill. Dec. 958, 650 N.E.2d 652 (emph. added)

The record before us affirmatively reflects an allocation rather than an exclusive delegation of the maintenance and control of this property. Thus, on the present factual record on the motion to dismiss, we cannot find the landlord exculpated from responsibility as to the retaining wall improvement, over which he retained some control. Claimant has not demonstrated that its suit against the landlord was unmaintainable or frivolous due to the lease terms.

On the other hand, this Court cannot determine, on the record now before us, whether the landlord may have actually borne some liability for the flood and whether he was ultimately culpable for the damage to the Claimant's property. Among other things, that determination turns on whether the retaining wall construction (or design) was actually negligent, whether its construction or design or both caused or exacerbated the flood conditions inside the building, and whether or not such flood causation, if proved, was the proximate cause of the damages. Under the facts before us, it is at least possible that the proximate cause of the damage was the University's negligent failure to operate the sump pumps that allegedly would

have prevented the flood damage. This generates a series of questions of fact, to be determined initially by the trier of fact and not by us on this motion.

This Court's discussion in a recent case of similar posture, well covers the point:

"Here the Respondent is asking us to dismiss a case prior to trial. We therefore may not * * * have all of the facts necessary to decide as a matter of law whether the acts of [the alleged tortfeasor] were a proximate cause * * *. The Illinois Supreme Court addressed a similar issue in * * * *Briske v. Village of Burnham*, 397 Ill. 193. The Court there stated:

'If a negligent act or omission does nothing more than furnish the condition making an injury possible, and such condition, by the subsequent independent act of a third person, causes an injury, the two acts are not concurrent and the existence of the condition is not the proximate cause of the injury.'

Similar results were reached in *Carr v. Shirland Township*, 66 Ill. App. 3d 1033, 23 Ill. Dec. 655, 384 N.E.2d 449 (2d Dist. 1978); *Cannon v. Commonwealth Edison Co.*, 250 Ill. App. 3d 379, 190 Ill. Dec. 183 (1st Dist. 1993); and *Thompson v. County of Cook*, 154 Ill. 2d 374, 181 Ill. Dec. 922, 609 N.E.2d 290 (1993).

All of these cases stand for the proposition that if a defendant's negligence does nothing more than furnish a condition by which injury is made possible, that negligence is not the proximate cause of the injury." *Simmons v. State* (May 23, 1995) (Patchett, J.)

This proximate cause analysis applies equally to the Respondent's other suggested recovery source, *i.e.*, the designer of the retaining wall. We cannot, on this meager record, determine the potential culpability of the designer of something that may or may not have caused the flooding in the first instance, and that may or may not be the proximate cause of the damage sought to be recovered from the State. Those underlying fact issues must be tried.

Accordingly, the exhaustion of remedies portion of the Respondent's motion to dismiss is denied without prejudice and subject to trial.

4. The Count II Third-Party Beneficiary Contract Claim

Respondent attacks the count II third-party beneficiary contract claim on three grounds: (1) exhaustion of remedies

(the identical argument addressed, *ante*, as to count I); (2) subject matter jurisdiction; and (3) waiver, based on the "letter agreement" between it and the Claimant.

> (a) Subject-matter jurisdiction over third-party beneficiary claim

We necessarily address the jurisdictional issue first. Respondent contends that the Court of Claims lacks jurisdiction over third-party beneficiary claims, such as count II, under section 4(b) of our Act. 735 ILCS 505/4(b).

Respondent's jurisdictional argument is based on the point that third-party beneficiary claims are not based on privity of contract, and are therefore not "contract" claims in the strict sense of a direct claim on an express contract. Respondent's argument is also based on the language of our statutory grant of jurisdiction over contract claims in section 8(b) of our Act. Respondent argues that our section 8(b) jurisdiction is limited to claims on express contracts which do not include *quantum meruit* or quasi-contractual liabilities, relying on *Brighton Building Maintenance Co. v. State* (1982), 36 Ill. Ct. Cl. 36.

Initially, we note that this jurisdictional issue appears to be a matter of first impression, even though this Court has adjudicated third-party beneficiary claims (*see, e.g., Pal-Mar Steel v. State* (1991), 44 Ill. Ct. Cl. 13; *First National Bank of Springfield v. State* (1990), 43 Ill. Ct. Cl. 1; *Sargent & Lundy v. State* (1996), 48 Ill. Ct. Cl. 333, seemingly without this jurisdictional issue having been raised. *Brighton, supra,* on which Claimant relies, is another of our decisions that adjudicated (and rejected) a third-party beneficiary claim on its merits, but did not involve a jurisdictional issue over that claim. (Of course, our decisions adjudicating third-party beneficiary claims without jurisdictional objections or rulings are not precedent on the jurisdiction issue.)

We must reject Respondent's jurisdictional objection as unfounded in the language of section 8(b), as unprecedented, and as unsupported by a cogent policy or historical basis. Respondent has not cited, and our research has not disclosed, any jurisdictional ruling in this Court or in any other court of limited jurisdiction that is at all pertinent on this issue. Similarly, we have found nothing in the legislative history of our statute, or its predecessor, that leads us to read the section 8(b) language any narrower than its plain meaning.

Our decision ultimately rests on the language of our statutory grant of jurisdiction over contract claims in section 8(b) of our Act (705 ILCS 505/8(b)), which reads as follows:

"§8. Jurisdiction. The court [of claims] shall have exclusive jurisdiction to hear and determine the following matters:

\* \* \*

(b) All claims against the State founded upon any contract entered into with the State of Illinois."

Under this language, this Court has jurisdiction over any action that is "founded upon" an express oral or written contract "entered into with the State \* \* \*." The "entered into" language limits the provision to express contracts, and thus excludes contracts that arise by means other than through agreement with the State. Respondent's observation that this Court has construed its section 4(b) jurisdiction to exclude *quantum meruit* and quasi-contract claims, and the *Brighton* decision reflecting that holding, is accurate but inapposite. A third-party beneficiary claim is fundamentally different than *quantum meruit* and quasi-contract claims, which are *implied* contracts that arise as a matter of public policy in the *absence* of an express agreement.

That is not the issue in this case. More pertinent here is the "founded upon" language, which is the only

other limiting phrase in section 8(b). This phrase is broad enough to encompass *ex contractu* claims based on an express contract with the State that assert any established legal theory. The crucial nexus is the express contractual basis.

A third-party beneficiary claim ordinarily is "founded on" an express contract—perhaps one that the Claimant is not a party to, and perhaps even one between parties with whom the Claimant is not in privity, but an express contract nonetheless. And that is the test imposed by the statute. So long as a third-party beneficiary claim is predicated on an express contract with the State, as this one is, we perceive no jurisdictional impediment under section 8(b).

Privity of contract, urged by Respondent as the test, is just not an element of section 8(b) and is thus immaterial to the jurisdictional analysis. We simply do not find a privity requirement in the Act. We cannot and will not insinuate it into the statute.[3]

This third-party beneficiary claim is alleged to arise out of an express contract between the State and a third party. Accordingly, the count II claim is an action "founded upon a contract entered into with the State of Illinois" within the meaning of section 4(b). Respondent's motion to dismiss count II for lack of subject matter jurisdiction is denied.

(b) Waiver

Respondent asserts the exculpatory provision of the "letter of agreement" between the University and the Claimant as a waiver of the count II claim. This waiver argument parallels the assumption-of-risk defense that was

---

[3] We also reject Respondent's unsupported and unfathomable argument that this Court lacks contract claim jurisdiction under section 8(b) to adjudicate damages to personalty as distinguished from "property or premise damage." (Respondent's motion to dismiss, part II, par. 3, at 4.)

interposed against the count I tort claim, which also was based on the exculpatory clause of the letter of agreement. Here, however, the exculpatory clause is presented as a bar to a contract claim rather than to a negligence claim.

The Lessor's Liability Act (765 ILCS 705/1), invoked above, applies to contract or lease provisions that exculpate a lessor from,

"liability for damages for injuries to * * * property caused by or resulting from the negligence of the lessor * * *."

The focus of the statute is lessors' negligence. The legislative intent reflected in the statutory language is directed solely at lessors' negligence liability, not their breaches of contracts. The statute cannot fairly be read as applying to exculpatory clauses that waive contractual liabilities.

We are constrained to hold that the statute does not bar the exculpatory clause in the letter of agreement from waiving the count II claim of this complaint, which asserts a liability that is not alleged to arise from a lessor's or sublessor's negligence but instead is predicated solely on a breach of a contract (to maintain insurance). The damages sought by count II are the loss of insurance benefits, not tort damages. This exculpatory clause, as applied to count II, does not "exempt" the respondent-lessor from "liability for * * * negligence * * * in the operation or maintenance of * * * real property," as the clause did as applied to count I. For the purpose of operating as a waiver of a contract claim, the letter of agreement is not unenforceable under the statute, and thus the letter of agreement bars Claimant's third-party beneficiary contract claim.

We recognize that it can be argued that the prohibited exculpation under the statute is from *"injuries * * * caused by or resulting from * * * negligence,"* irrespective of the theory of the cause of action that generates liability. That would be a considerably broader reading of the Act.

However, such a mechanical reading of the statutory language belies its clearly indicated purpose. Such an expansive interpretation would read out of the statute its reference to lessors' "negligence." That phrase would be rendered meaningless if the statute were given across-the-board effect beyond negligence actions. In order to give effect to that statutory phrase, as we are required to do by the canons of construction and by deference to the legislature's enacted words, we must read the "negligence" phrase as a limitation on the application of the Act.

We need only dispose of Claimant's alternate argument that the letter of agreement should be voided as a misrepresentation, based on its assertion that "NIU carries no insurance * * *." Claimant contends that the statement was misleading because the University was obliged, under its lease, to obtain the very insurance that it announced to Claimant and other faculty members would not be obtained. This obviously duplicitous pair of pronouncements could not mislead Claimant or his peers: the University did *not* obtain insurance, and that is precisely what its "letter" told the art department faculty it would not do. Whatever else may be said, the University accurately told Claimant what it was not going to do.

Respondent's motion to dismiss count II as barred by the waiver of the "letter of agreement" is granted, and count II will be dismissed.

5. Order

For the foregoing reasons, it is hereby ordered:

A. Respondent's motion to dismiss count I (negligence):

> (1) as barred by Claimant's express assumption of risk in the letter of agreement of February 12, 1985, is *denied with prejudice*; and

(2) as barred by the section 22(g) two-year statute of limitations is *denied without prejudice*, and subject to further proceedings;

(3) as barred by Claimant's failure to exhaust alternative sources of recovery is *denied without prejudice*, and subject to further proceedings; and

B. Count I is *remanded* to the assigned Commissioner for further proceedings;

C. Respondent's motion to dismiss count II (third-party beneficiary breach of contract):

(1) for lack of jurisdiction is *denied*; but

(2) as waived by Claimant's express exculpation of the Respondent in the letter of agreement of February 12, 1985, is *granted*; and

D. Count II is *dismissed with prejudice*.

## ORDER

EPSTEIN, J.

This matter coming to be heard upon the joint stipulation of the parties to settle the claim herein, due notice having been given and the Court being fully advised in the premises.

It is ordered that Claimant be awarded the sum of seventeen thousand five hundred and no/100 dollars ($17,500) in full and final satisfaction of the claim herein.

It is further ordered that the Court, while not bound by the settlement, does approve it, and that the award of $17,500, as the agreed amount, is entered in favor of Claimant.