(No. 61473.—

LISA WRIGHT, Appellee, v. MR. QUICK, INC.,
Appellant.

*Opinion filed November 21, 1985.*

Heyl, Royster, Voelker & Allen, of Peoria (Rex K. Linder and Kathleen G. Bennett-Dean, of counsel), for appellant.

Allen, Clark & Harn, Ltd., of Peoria (Gary L. Clark, of counsel), for appellee.

JUSTICE SIMON delivered the opinion of the court:

The plaintiff, Lisa Wright, was injured when she fell in the parking lot of her employer, Great Eight, Inc. (Great Eight). Great Eight operates a fast-food restaurant pursuant to a franchise agreement and real estate sublease with the defendant, Mr. Quick, Inc. (Mr. Quick). Plaintiff instituted an action against Mr. Quick in the circuit court of Tazewell County, claiming that defendant's failure to properly maintain the premises caused her injuries; Great Eight, of course, could not be named as a defendant because plaintiff's exclusive remedy against her employer was that provided under the Workers' Compensation Act (Ill. Rev. Stat. 1981, ch. 48, par.

138.1 *et seq.*). The circuit court allowed Mr. Quick's motion for summary judgment. The appellate court, with one justice dissenting, reversed and remanded for further proceedings. (129 Ill. App. 3d 226.) We granted defendant's petition for leave to appeal (94 Ill. 2d R. 315).

The crux of this controversy is whether, at the time plaintiff was injured, defendant owed a duty in tort to persons on the property, a question which turns on the relationship between Mr. Quick and Great Eight. Mr. Quick leased the land on which the restaurant is located from the owners, who are not parties to this action. Mr. Quick, in turn, executed a sublease demising the entire property to Great Eight, which actually operated the restaurant and was in sole possession of the property. A franchise agreement between Mr. Quick as franchisor and Great Eight as franchisee was entered into contemporaneously with the sublease.

The parties agree that basic principles of landlord and tenant law govern the relationship between the sublessor, Mr. Quick, and its sublessee, Great Eight. (49 Am. Jur. 2d *Landlord and Tenant* sec. 503, at 484 (1970).) Generally, the tenant who is in possession, not the landlord, is liable for injuries sustained by third persons because of a failure to keep the property in repair. (*Wagner v. Kepler* (1951), 411 Ill. 368, 371; *West Chicago Masonic Association v. Cohn* (1901), 192 Ill. 210, 218; 49 Am. Jur. 2d *Landlord and Tenant* sec. 981, at 953 (1970).) "The basic rationale for lessor immunity has been that the lease is a conveyance of property which ends the lessor's control over the premises, a prerequisite to the imposition of tort liability." (Schoshinski, *American Law of Landlord and Tenant* sec. 4.1, at 186 (Lawyer's Cooperative 1980).) Thus, under the general rule, only Great Eight, as the party in possession and control of the entire premises, could be held liable for injuries to persons

on the property. There are, however, several exceptions to the rule of lessor immunity; where an exception applies, the landlord may be held liable for injuries notwithstanding the lease. (See *Gilbreath v. Greenwalt* (1980), 88 Ill. App. 3d 308, 309-10.) The only exception relevant here provides that if the landlord, by covenant with its tenant, has assumed the obligation to keep the premises in repair, third persons who suffer injury can look to the landlord as well as to the tenant. *West Chicago Masonic Association v. Cohn* (1901), 192 Ill. 210, 218; *Dial v. Mihalic* (1982), 107 Ill. App. 3d 855; Restatement (Second) of Torts sec. 357, at 241 (1970).

Plaintiff argues that Mr. Quick did covenant to repair and thus this case falls within the exception to the general rule of lessor immunity. Plaintiff submits, and the appellate court held, that Mr. Quick's covenant in the prime lease with the owners that it would "[m]aintain the interior of the improvements on the premises and exterior including drives and blacktop, in a good condition" was incorporated in the sublease, and that therefore Mr. Quick assumed a duty in tort to third persons which continued after the sublease gave it the status of lessor.

The mere fact that Mr. Quick, as lessee under the prime lease, promised its lessor that it would maintain the premises created no additional tort duty in favor of third persons. While it was in possession of the property, Mr. Quick's tort duty to third persons existed independently of any contractual arrangement. "[S]ince the tenant's liability to third persons is based on his negligence, it is not increased by the fact that he has expressly covenanted to repair." (49 Am. Jur. 2d *Landlord and Tenant* sec. 985, at 957 (1970).) In short, Mr. Quick's covenant in the prime lease essentially provided a contract remedy for the owner if Mr. Quick allowed the premises to fall into disrepair.

Once Mr. Quick wholly demised the property to Great

Eight, the tort duty fell only upon Great Eight as tenant in possession unless Mr. Quick actually agreed with the sublessee that, as sublessor, Mr. Quick would maintain the premises. The record discloses no such agreement.

The sublease does not, on its face, say anything about the duty to repair; however, the franchise agreement, which was executed contemporaneously with the sublease, expressly addresses the question of responsibility for repair as between Mr. Quick and Great Eight. Item XI(a) of the franchise agreement stipulates that the "establishment (building, equipment and parking area) shall be kept and maintained at all times by Second Party [Great Eight] in good condition and repair." It is well established that one instrument can incorporate the terms of another. (*Provident Federal Savings & Loan Association v. Realty Centre, Ltd.* (1983), 97 Ill. 2d 187, 192-93.) All that is required is an expression of the parties' intent to incorporate those terms. (*Pinson v. Allstate Insurance Co.* (1979), 68 Ill. App. 3d 788, 791.) In this case, the sublease unequivocally incorporates Great Eight's duty to repair set forth in the franchise agreement by providing:

> "It is understood between the parties that the sublessee is to use the premises herein demised for the operation of a 'Mr. Quick' store, and that in the operation of the premises, *the sublessee will comply with all of the terms and conditions and provisions of the store franchise agreement which exists between the parties.*" (Emphasis added.)

It is thus clear that the parties to the sublease intended the duty to repair to rest on Great Eight and not Mr. Quick. Contrary to the appellate court, we think it follows that Mr. Quick did not intend to promise Great Eight, by annexing the prime lease to the sublease, that *it* would also repair. When Great Eight became the tenant in possession and Mr. Quick the sublessor, the only possible source of Mr. Quick's continued duty to third

persons to repair would have been an agreement with the sublessee; but the expression by the parties in the franchise agreement that Great Eight would repair demonstrates that no such duty was assumed by Mr. Quick.

Plaintiff, contesting this conclusion, points to three provisions of the sublease which she argues demonstrate that Mr. Quick's duties under the prime lease were incorporated in the sublease so that Mr. Quick's covenant to repair as a lessee was converted into an identical covenant by Mr. Quick as sublessor in the sublease. First, the sublease provides that it runs concurrent with the prime lease "a copy of which lease is hereto annexed, marked Exhibit A and made a part hereof *** ." Second, paragraph three of the sublease states: .

> "Sublessee agrees to abide by and be bound by the terms and conditions of the lease above referred to, except insofar as its terms are changed and modified by this agreement *** ."

Finally, paragraph four states that the sublease "is subject to the terms and conditions of the lease between lessee and owner of premises, and that this lease shall automatically terminate upon termination, cancellation or expiration of the lease between lessee and owner of the premises."

The bare recital that the prime lease is annexed to and made a part of the sublease does no more than provide a reference for the substantive provisions of the sublease, such as paragraphs three and four. But these sections of the sublease do not manifest an intention to incorporate Mr. Quick's duty to repair as a covenant to the sublessee. Indeed, paragraph three does not appear to be directed to Mr. Quick's duties at all; it merely states that the "*sublessee* [Great Eight] agrees to abide by and be bound by" the terms of the prime lease. (Emphasis added.) It is obvious that the sublessor, Mr. Quick, extends no covenants by paragraph three. Moreover, the

choice of the terms "be bound by" and "abide by" indicates the parties' intention to place responsibilities on the sublessee, not to create rights in its favor. Great Eight would hardly need to be "bound by" a provision imposing a duty on Mr. Quick. To the contrary, this provision was apparently intended to establish that Great Eight would fulfill the duties originally agreed to by Mr. Quick in the prime lease. Plaintiff's suggestion that the paragraph can be read as an agreement by Mr. Quick to retain the duty to repair tortures the plain meaning of the words chosen by the parties.

The language of paragraph four is similarly unavailing to support plaintiff's position. In that paragraph, the parties made clear that the sublease was "subject to" the terms of the prime lease and that it would automatically terminate upon termination of the prime lease. Plaintiff would have us read this general language to carry forward Mr. Quick's duty to repair from the prime lease despite the fact that under the sublease Mr. Quick is in the position of lessor, not that of lessee. We conclude that the parties did not intend this result, given the difference in Mr. Quick's position under the two instruments. The term "subject to," in this context, means "subordinate, subservient, inferior *** to; governed or affected by ***." (Black's Law Dictionary 1278 (5th ed. 1979).) The sublease was subordinate to or governed by the prime lease in the sense that the sublease could not conflict with the prime lease and could not extend beyond the term of the prime lease. Because nothing in the prime lease addressed the division of responsibility for repair between Mr. Quick and any sublessee, the fact that the sublease was "subject to" the prime lease is irrelevant. There is no conflict between Mr. Quick's engagement to repair with respect to its landlord and a sublease making it the duty of the sublessee to repair as between Mr. Quick and the sublessee.

Inasmuch as Mr. Quick never promised Great Eight that it would repair, we hold that the general rule of lessor immunity applies and that Mr. Quick owed no tort duty to third persons. Any obligation to repair which Mr. Quick accepted by covenant was assumed as a lessee and not a lessor. Consequently, Mr. Quick never subjected itself to the exposure imposed upon a lessor when he covenants as lessor to repair and maintain premises.

Finally, plaintiff contends that the statute which bars lessors from exempting themselves from liability for negligence (Ill. Rev. Stat. 1981, ch. 80, par. 91) invalidates the provision in the franchise agreement requiring Great Eight to repair and therefore renders Mr. Quick liable for injuries based on negligence. The short answer to this argument is that the franchise agreement does not purport to, or have the effect of, exculpating Mr. Quick from negligence liability. That the franchise places the duty to repair on Great Eight merely evidences the fact that Mr. Quick did not assume such a duty. The statute can have no application where, as here, the sublessor had no tort duty from which to exculpate itself. See Comment, *The Effect of Exculpatory Agreements upon Landlords' Tort Liability in Illinois*, 54 Nw. U. L. Rev. 61 (1959).

For the foregoing reasons, we reverse the judgment of the appellate court and affirm that of the circuit court.

*Appellate court reversed;*
*circuit court affirmed.*