[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON STOP SHOP'S MOTION FOR SUMMARY JUDGMENT
This suit is a claim for damages allegedly resulting from serious injuries resulting from the plaintiff's having come in contact in 1995 with a high voltage terminator of an electric transformer on property in Orange, Connecticut. The plaintiff brought suit in May 1997 against the owner of the property, Stop Shop, Bradlees, Inc., and the United Illuminating Company.
Stop Shop has now filed a motion for summary judgment as to the counts directed against it — the second count which is based on a claim of negligence, count seven, brought by the sister is based on a claim of bystander emotional distress; counts thirteen and fourteen are claims by the parents of the plaintiff and allege loss of filial consortium.
The standards for granting a motion for summary judgment are well known. Such a motion should be granted only if no material fact is in dispute because, if such a fact is in dispute, a party has a constitutional right to have it decided by a jury. TownBank Trust Co. v. Benson, 176 Conn. 304 (1978). In other words, if a genuine issue of material fact is found by the court, it cannot try it on such a motion, Rathkopf v. Peterson,148 Conn. 260, 263 (1961), and of course the burden is on the party moving for summary judgment to show the absence of any genuine issue as to all material facts. Dougherty v. Graham, 161 Conn. 238 (1971). CT Page 14664 The court must view all of the evidence in the light most favorable to the nonmoving party. Connecticut Bank Trust Co. v.Carriage Lane Associates, 219 Conn. 772 (1991). On the other hand, such motions serve an important purpose of winnowing out legally insupportable claims and a party should have the right to avoid the expense and wasted time imposed on it by litigation that is not supported by the facts or the law.
 1.
The claim by the plaintiff against the defendant Stop Shop, Inc. (the defendant) is based on negligence and all the other claims by the sister and the parents are in part derivative in that they all must be grounded on a theory that the defendant violated a duty that it owed to the injured plaintiff to use reasonable care.
Negligence law is based on the idea of legal duty. "Where there is no legal duty, there can be no actionable negligence. Unless some relationship exists between the person injured and the defendant, by which the latter owes a duty to the former, there can be no liability for negligence." Neal v. Shiels,166 Conn. 3, 12 (1974).
When a person is injured as a result of the conditions of land or buildings or structures on the land, it is the possession or control of land that imposes liability for those injuries not ownership of the land. Mark v. Clinch, 166 Conn. 295, 296 (1974). Since possession or control of premises is the legal basis for premises liability, a landlord who is not in possession is usually not liable to persons injured on the leased property — the tenant, who is in possession, would be liable. See Smith v. Housing Authority, 144 Conn. 13, 16-17 (1956); see generally Connecticut Law of Torts, Wright, Fitzgerald, Ankerman, § 46, p. 108, § 54, p. 139. At § 46, page 108, Wright states that the reason for the rule is that "the possessor is ordinarily the party responsible for the reason that the person in possession is in a position of control and is best able to prevent harm." Also see Prosser Keaton on Torts, 5th ed., § 57, p. 386.
Since the policy of the law in this area is to prevent harm, there is a refinement that must be added to the foregoing observations. Thus, "the court has defined `control' as `thepower or authority to manage, superintend, direct or oversee." CT Page 14665Alderman v. Hanover Ins. Group, 169 Conn. 603, 605 (1975);Panorini v. Johnson, 158 Conn. 9, 98 (1969). (Emphasis added). Thus, an out of possession landlord can be found liable for injury caused by negligently created conditions on a portion of the premises if there is a written lease and the intent of the parties as reflected in the lease indicates that the landlord has reserved control of that portion of the premises. See Martel v.Malone, 138 Conn. 385, 388-389 (1951).
A lease is a contract concerning land, and Levine v. Massey,232 Conn. 272, 277-278 (1995) stated: "Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . `where there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law.'"
One case has thus said in a summary judgment context as applied to premises liability
 "Control over a particular part of a business premise is ordinarily dependent upon determining whether that portion [of the premises containing the defective condition is or is not included in the lease and, unless the terms of the lease determine the matter, the question is one of fact . . . Tenney v. Pleasant Valley Realty Corp. , 136 Conn. 325, 330. It becomes an issue for the trier, however, only where the written lease read as a whole cannot be said to resolve definitely or expressly the issue of control . . . Panoroni v. Johnson, 158 Conn. 92, 99; Rogers v. Great Atlantic Pacific Tea Co., 148 Conn. 104, 107."
Edgar v. Burger King Corp. , 1993 Conn. Sup. 230, Docket No. 387119, Sup. Ct. Htfd., 1993.
What this means then is that in a premises liability case where a trial court is presented with a landlord's motion for summary judgment based on a claim that it did not have possession or control of the premises, the trial court must first look to the terms of any lease agreement. If the language of the lease definitively establishes that the landlord did not reserve control of that portion of the premises which is claimed to have been defective and caused injury, then the defendant landlord is entitled to prevail on the motion. If the language is not clear CT Page 14666 on this question, then a question of fact is presented which should be decided by the jury.
There is one caveat to all of this which may apply in certain cases. No matter what the written lease may say and even if it clearly does not reserve the offending portion of the premises for the landlord's control, the landlord could still be found to be in possession and control of that portion of the premises if in fact it did actually engage in activities regarding such an area which made clear it possessed control. Although the language is ambivalent, one case seemed to be saying this when it said regarding the possession or control of a defective stairway: "The written lease read as a whole cannot be said to resolve definitely or expressly the issue of control. Thus the actual use of the stairway, the circumstances attending its use, and the evidence of repairs become relevant to the issue of actual control . . ." Panorini v. Johnson, supra, 158 Conn. at page 99, referring to Martel v. Malone, supra, 138 Conn. at page 391.
The court will first examine the somewhat complicated leases and subleases involved in this case as they bear on the issue of possession and control, then the court will determine if there is any evidence regarding actual conduct of the defendant relative to the premises which indicates it had in fact possession and control of the premises and particularly that portion of the premises where and by contact with the plaintiff suffered injury
 2.
The court will now examine the operative leases to see what light they may shed on the issue of control.
In August 1973, the defendant leased the premises involved din this case from the DiNardos (this lease shall be referred to as the overlease). The term of the lease was for 20 years commencing August 1, 1974 with four periods of automatic extensions of five years each. The lease gave the defendant the right to assign the lease and another article in the lease stated that the defendant agreed, with certain exceptions, to "maintain and make replacements to . . . the transformer." It was contact with the allegedly negligently maintained transformer that caused the plaintiff his injuries.
In October 1874 the DiNardos assigned their interests in the lease to MSB Real Estate Corp. which then assigned its interest CT Page 14667 to Fronson Corp. in December of 1987. On June 18, 1988, the defendant assigned its interest in the lease, including all of the terms, covenants and conditions of the lease to Bradlees New England Inc. The assignment states, "Assignee [Bradlees] hereby accepts said assignments and covenants with assignor [defendant Stop Shop]; that assignee, its successor and assigns, hereby assumes and will henceforth perform or cause to be performed all of the obligations of every nature contained in the related agreements which, by the terms thereof, are imposed upon the assignor."
On July 8, 1992, Bradlees New England, Inc. assigned its interest in the property back to the defendant which immediately subleased its interest back to Bradlees. In an article of the sublease, it was agreed that the sublease was "pass through in nature", with the tenant Bradlees having the benefit of all rights and the burden of all obligations under the overlease.
The term of the overlease was extended pursuant to the first automatic extension and the 1992 sublease was in effect at the time of the 1995 accident. At that time the defendant remained the tenant under the overlease.
Although at one time Bradlees was a subsidiary of the defendant an uncontested affidavit submitted by the defendant indicates that at the time of the 1992 sublease Bradlees and its stores were no longer affiliated with the defendant; they were separate corporate entities.
The 1992 sublease at § 14.3 also contained the following language:
". . . Landlord [defendant Stop Shop] may, upon reasonable notice to tenant [Bradlees] (except that no notice, or only as much notice as possible under the circumstances, need be given in the case of any emergency) also enter the Sublease Premises, without charge, to make such repairs, improvements, alterations or additions as may be necessary in order to comply with the requirements imposed on Landlord by the Overlease, or by any public authority having jurisdiction over the Sublease Premises, and to make repairs required of Tenant which Tenant has failed to make promptly, and to exercise any of Landlord's rights under this sublease, and for any of such purposes to CT Page 14668 use or occupy without charge such portion of the Sublease Premises as may be reasonably necessary therefor. Landlord shall not, in the course of any such entry, unreasonably interfere with the conduct of business in the Sublease Premises."
The 1988 and 1992 sublease clearly reference the original over lease between the defendant and the property owners; there is no question that one instrument can refer to and incorporate the terms of another instrument, all that is required is that the parties express an intent to incorporate those terms, cfProvident Federal Savings Loan Assoc. v. Realty Centre Ltd,454 N.E.2d 249 (1983), Pinston v. Allstate Ins. Co., 386 N.E.2d 638
(1979). Here by explicit language the subleases refer to the fact that Bradlee's intended to assume all the obligations of the defendant under the over lease. This would of course include the obligation agreed to by the defendant in the over lease to "maintain and make replacements to" the transformer whose defective condition allegedly caused the injury here.
The Illinois case of Wright v. Mr. Quick Inc., 486 N.E.2d 908
(Ill, 1985) offers an interesting analogy to this case. In that case the employee of a sublessee, Great Eight, brought suit against a sublessor, Mr. Quick, Inc., to recover for injuries. The court, citing 49 Am Jur 2d, noted that the basic principles of landlord and tenant law govern the relationship between a sublessor and a sublessee. The basic rationale for lessor immunity is that a lease really represents a conveyance of property which ends the lessor's control over the property which is a prerequisite to the imposition of liability, id. at page 909 where court quoted from Schoshinski American Law of Landlord andTenant, § 4.1 at p 186 (1980). The sublease here conveyed all of the sublessor's interest in the property to the sublessee Bradlee's and specifically also any reservation of "control" over the transformer by the sublessor's original lease agreement to maintain it. The over lease or prime lease gave the defendant a perfect right to make such an assignment. The contract and tort consequences of the defendant's agreement in the over lease to maintain and repair the transformer are well stated in the Wright
case at 480 N.E.2d page 909:
"The mere fact that Mr. Quick, as lessee under the prime lease, promised its lessor that it would maintain the premises created no additional tort duty in favor of third CT Page 14669 persons. While it was in possession of the property, Mr. Quick's tort duty to third persons existed independently of any contractual arrangement. "[S]ince the tenant's liability to third persons is based on his negligence, it is not increased by the fact that he has expressly covenanted to repair." (49 Am. Jur.2d Landlord and Tenant
sec. 985, at 957 (1970).) In short, Mr. Quick's covenant in the prime lease essentially provided a contract remedy for the owner if Mr. Quick allowed the premises to fall into disrepair.
 Once Mr. Quick wholly demised the property to Great Eight, the tort duty fell only upon Great Eight as tenant in possession unless Mr. Quick actually agreed with the sublessee that, as sublessor, Mr. Quick would maintain the premises. The record discloses no such agreement."
There is nothing in the subleases which can be construed as a covenant by the defendant to Bradlee's to repair or maintain the property in general or the transformer in particular. Section 14.3 of the 1992 sublease merely gave the defendant the right to enter the property and make any repairs it was required to make under the over lease. But this circumstance would only arise if the sublessee failed to make those repairs it had obligated itself to perform in the 1992 agreement. The point is that an obligation to repair on a landlord's part, and in this context on a sublessor's part, will not be created by a right of entry or reservation of a right to repair in a lease, Palimas v. AreasRealty Co., 130 Conn. 687, 692 (1944), cited in Friedman onLeases, 3d ed, Vol 1, § 10.05, pp 630-631.
Neither can Section 14.3 of the 1992 sublease be interpreted as reserving a right of control for the defendant sublessor regarding the repair and maintenance of any portion of the premises, specifically the transformer, which it was obligated to maintain under the over lease.
A mere agreement to make repairs, let alone an agreement to allow the sublessor to make those repairs the sublessee failed to make, does not support an inference of retention of control by CT Page 14670 the sublessor defendant, Masterson v. Atherton, 149 Conn. 302,311 (1962), Reservation of control can be found only if there is a specific clause in the lease giving the landlord the right to inspect the premises and the exclusive right to make repairs coupled with an agreement by the sublessee to refrain from making any repairs at all, Smith v. Housing Authority, 144 Conn. Conn. 13,16-17 (1956) is the leading case for this proposition, seeMasterson v. Atherton, supra which refers to it and Panaroni v.Johnson, supra at 158 Conn. page 98, also cf Prodigy Services Co.v. South Broad Associates, et al, 64 F.3d 48, 50 (D. Conn 1995). Insofar as Edgar v. Burger King Corp. , supra, cited by the plaintiff, disagrees with this position the court cannot adopt its reasoning but the court does not believe it does — in fact the court in Edgar prior to ruling that it could not conclude that the lease before it resolved the issue of control in the landlord's favor specifically noted the lease specifically reserves for the lessor the right to enter the premises to make repairs when the lessee fails to do so and then referred to clause in the lease "which indicates that the lessee shall not make any improvements or alterations of the premises without the prior consent and approval of the lessor."
The language of § 14.3 of the sublease of 1992 does not even give the defendant a general right of inspection — reasonable notice to the sublessee must be given before the property is entered except in the case of an emergency, the sublessee's business shall not be unreasonably interfered with, and the right of any entry is predicated on the sublessee's failure to make those repairs or do that maintenance it had obligated itself to do in the first place, finally the sublessor would enter only to comply with obligations imposed on it by the over lease or that public authorities placed on the premises.
Also pursuant to Smith v. Housing Authority, supra, how could it possibly be said that anything in the language of § 14.3 prohibited the sublessee from making any repairs or maintenance — the whole point of this lease provision is to give the right to the sublessee to enter the premises to ensure obligations it had under the over lease were being met, obligations which the sublessee by definition did not itself fulfill although it had agreed to by the terms of the subleases it entered into.
Finally the plaintiff points to a section of the 1992 CT Page 14671 sublease agreement, § 15.2, as indicating that the defendant "exhibited control over the premises" — Bradlees had to procure insurance naming the defendant Stop Shop as the beneficiary. Tait Laplante in Handbook of Connecticut Evidence at § 8.14 page 267 is cited for the proposition that insurance coverage is inadmissible on the issue of negligence but may be relevant on such issues as ownership or control of the premises. Tait LaPlante seem to treat this as falling in the category of an implied admission; they also cite § 411 of the Federal Rules of Evidence which states that exclusion of evidence of insurance against liability is not required when it is offered "as proof of agency, ownership of control."
But the defendant certainly had an insurable interest which would lead it to require that Bradlees secure insurance. No matter what the legal consequences of the assignment of the lease to the rights of the defendant and Bradlees between themselves, the defendant remained obligated to the property owners to fulfill any covenants made by the defendant in the overlease to the so-called overlandlord, see Wright v. Mr. Quick, Inc, supra, cf Friedman On Leases, 3 ed, Vol. 1, § 7.501(b), pp. 351-352. Because of these obligations it retained the right to enter the property to fulfill these obligations if Bradlees did not meet its responsibilities in this regard. At the very least the defendant could be held liable for injuries that might result from the manner in which it might do any maintenance or repair work required by Bradlees failure to do so.
Given the previously discussed definitive language of the sublease which the court concludes preclude a finding that the defendant reserved control in these premises the court does believe the insurance coverage provisions have any bearing on the issue of control or necessitate a conclusion that the issue of control is one of fact due to the ambiguity of the language of the sublease.[1]
A fair reading of all of the language of these leases and subleases leads the court to conclude that they definitely and conclusively placed possession and control of these premises and any portion of them in the hands of the sublessee Bradlees and that the defendant sublessor did not retain or reserve any possession or control in the premises as a result of any of the terms in these leases and subleases. No issue of material fact regarding these issues is raised by the language of the leases and subleases. CT Page 14672
 (2)
Despite the language of the lease are there any other factors or is there any other evidence to indicate that in fact the defendant retained possession or control in these premises or any portion of them or more exactly is there any genuine issue of fact apart from the language of the lease and subleases raising a question as to the issue of control of these premises.
The only evidence of this nature offered in opposition to the motion for summary judgment is certain deposition testimony. Two United Illuminating Company (U.I.) employees indicated that the customer owns the transclosure which encloses the transformer. One of them said that he was unable to determine which of the defendants was responsible for maintaining the transclosure. The other employee said that she was unable to determine whether the original customer was the owner of the premises, the lessor, or the lessee. The plaintiff goes on to argue that the defendant was the original lessee of the premises therefore according to this deposition testimony "Stop Shop as the original customer may have owned the transclosure. Based on this testimony alone, there is a question whether the defendant, Stop Shop, was responsible for maintaining the transclosure", (last page of plaintiff's brief).
The deposition testimony is too speculative and inconclusive; as the defendant points out it is the plaintiff's burden to prove ownership, control and responsibility to maintain the transformer or anything else on the property. Even if the defendant as original lessee was the "customer" of the UI and according to that company's "understanding" was responsible for the transformer why could not that responsibility be assigned to the sublessee — the explicit language of the sublease required Bradlees to perform the defendant's covenants to the overlandlord which again explicitly referenced maintenance of the transformer.
In light of the foregoing discussion, the defendant's motion for summary judgment is granted.[2]
CORRADINO, J.