**Robert and Loretta TAYLOR,
Appellants (Plaintiffs),**

v.

**SCHUKEI FAMILY TRUST, By and Through Gordon W. SCHUKEI, Gerald D. Schukei, and Carol A. Parish as Trustees, Appellees (Defendants).**

No. 97–205.

Supreme Court of Wyoming.

Feb. 2, 2000.

Representing Appellants: Todd Hambrick of Krampner, Fuller & Hambrick Attorneys at Law, L.L.C., Casper, Wyoming.

Representing Appellees: Patrick J. Murphy and Stephenson D. Emery of Williams, Porter, Day & Neville, P.C., Casper, Wyoming.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,* JJ.

THOMAS, Justice.

The only issue in this case is whether the Schukei Family Trust (the Trust) owed a duty of care to Robert Taylor, an employee of the Trust's tenant, Schukei, Inc., who was injured by a defective overhead door on the leased premises. The district court entered an Order Granting Summary Judgment to the Trust and its several trustees. The district court relied upon *Ortega v. Flaim*, 902 P.2d 199 (Wyo.1995), and ruled that the landlord owed no duty to the tenant or the tenant's employees. The district court also held that none of the exceptions to the rule of non-liability listed in *Ortega* are present in this case. We hold that the lease in this case is susceptible to a construction that the landlord had contracted to repair the premises, resulting in a mixed question of fact and law with respect to the intent of the parties to the lease. That question constitutes a genuine issue of material fact under the circumstances, and the grant of a summary judgment to the landlord was not appropriate. The Order Granting Summary Judgment entered in the district court must be reversed and the case remanded for further proceedings in accordance with this opinion.

In the Brief of Appellant, filed on behalf of Robert and Loretta Taylor (the Taylors), the issue, a resolution of the issue, and an outline of the reasons for the resolution are articulated in this way:

I.  Did the lower court commit reversible error by holding that the landlord (Trust) owed Appellant no duty of care with regards to the overhead door which fell and injured Appellant?

Yes, for the following reasons:

A.  Summary Judgment—Questions of Law v. Fact

B.  Special Circumstances—Landlord & Tenant Same People

C.  Control

D.  Contract Between Landlord/Tenant

E.  Negligent Repairs

This Statement of the Issue is set forth in the Brief of the Appellee Schukei Family Trust:

Whether, under the circumstances of the case at bar, the landlord owed a commercial tenant's employee a legal duty to protect him from patent defects of the leased premises?

In September of 1993, the Trust acquired a commercial building located at 817 South 4 th

---

* Chief Justice at time of expedited conference;   retired November 2, 1998.

Street in Douglas. The Trust leases that building to Schukei, Inc., d/b/a Valley Motor Supply (Schukei, Inc.). There is no written agreement between the Trust and Schukei, Inc., but the record demonstrates that pursuant to oral agreement rent is payable monthly in the amount of $750.00 and "[b]y mutual understanding, the Trust is responsible for repairs to the structure, itself, while [Schukei, Inc.] is responsible for interior repairs." More specifically, the Trust is responsible for the "[m]aintenance and repair of the building's overhead doors * * *."

It can be inferred logically that the Trust and Schukei, Inc. were able to conduct the lease transaction in such an informal way because the trustees and the principals of Schukei, Inc. are essentially the same people. The beneficiary of the Trust is the mother of all of the trustees. These siblings also are current or former shareholders and officers in Schukei, Inc., of which the Trust also is a shareholder. The president of Schukei, Inc. is the husband of one of the trustees.

Robert Taylor was employed by Schukei, Inc. in April of 1995, and in June of that year he sustained a serious injury to his shoulder when one of the overhead doors in the building fell on him. Prior to that accident, Robert Taylor, the Trust, and Schukei, Inc. all were aware of the defective condition of the door. The defective condition was the cause of Robert Taylor's injury.

The Taylors brought an action against the Trust on multiple theories of liability. The district court, after authoring a Decision Letter and a Supplemental Decision Letter, granted the Trust's motion for a summary judgment, and the Order Granting Summary Judgment was entered on July 7, 1997. The essence of the justification for the district court's ruling is found in its reliance upon *Ortega,* 902 P.2d 199 and *Hefferin v. Scott Realty Co.,* 71 Wyo. 114, 254 P.2d 194 (1953). The district court concluded that as a matter of law, under the thrust of these prior cases, the Trust owed no duty to Schukei, Inc. or to Robert Taylor, its employee.

■ Our jurisprudential rules relative to summary judgment are consistently applied by this Court. A summary judgment is appropriate only when no genuine issues of material fact exist, and the prevailing party is entitled to judgment as a matter of law. W.R.C.P. 56; *Century Ready–Mix Co. v. Campbell County School Dist.,* 816 P.2d 795, 798 (Wyo.1991). When an order granting a summary judgment comes before this Court for review, we examine the record in the light most favorable to the party opposing the motion, in this instance the Taylors, and give to that party the benefit of all favorable inferences that fairly may be drawn from the record. *Id.* at 799 (*quoting Doud v. First Interstate Bank of Gillette,* 769 P.2d 927, 928 (Wyo.1989)). Our statement of the facts set forth above is gleaned from the record consistently with those principles.

More recently, we have summarized our standard for the review of summary judgment in this way:

" 'When a motion for summary judgment is before the supreme court, we have exactly the same duty as the district judge; and, if there is a complete record before us, we have exactly the same material as did he. We must follow the same standards. The propriety of granting a motion for summary judgment depends upon the correctness of a court's dual findings that there is no genuine issue as to any material fact and that the prevailing party is entitled to judgment as a matter of law. * * * *' " "A summary judgment should only be granted where it is clear that there are no issues of material facts involved and that an inquiry into the facts is unnecessary to clarify the application of law. *Johnson v. Soulis,* Wyo., 542 P.2d 867 (1975). A material fact is one which has legal significance. *Johnson v. Soulis, supra.* It is a fact which would establish a defense. *Wood v. Trenchard,* Wyo., 550 P.2d 490 (1976). * * *"

*Nowotny v. L & B Contract Industries, Inc.,* 933 P.2d 452, 455 (Wyo.1997) (*quoting Thomas By Thomas v. South Cheyenne Water and Sewer Dist.,* 702 P.2d 1303, 1304 (Wyo.1985)).

We find no fault with the reliance by the district court upon our decision in *Ortega* where we held that Wyoming continues to follow the common law rule of landlord im-

munity from tort liability under most circumstances. We said in deciding that case:

In the landlord and tenant relationship, Wyoming follows the common law rules. *Lyden v. Winer*, 878 P.2d 516 (Wyo.1994); *Mostert v. CBL & Assoc.*, 741 P.2d 1090, 1099 (Wyo.1987); *Medlock v. Van Wagner*, 625 P.2d 207, 208 (Wyo.1981); *Matter of Estate of Mora*, 611 P.2d 842, 847 (Wyo. 1980). Under those rules, a landlord owes no greater duty to a tenant's guests than the landlord owes to the tenant himself. *Clemmons v. Fidler*, 58 Wash.App. 32, 791 P.2d 257, 260 (1990). Generally, that duty is nonexistent since landlords enjoy immunity from tort liability, being one of the few classes of defendants who can invoke *caveat emptor.*

The common law rule as applied today actually originated during 16th century feudalism when a tenant leased to acquire land. Buildings were simple and their living conditions of little concern to the tenant. Tenants' rights were best protected by the common law view that a landlord's lease to a tenant was a conveyance of the premises for the term of the lease. From that view, the tenant was the owner and occupier subject to all the responsibilities of one in possession and burdened with maintaining the premises in a reasonably safe condition to protect persons who came upon the land. *Borders v. Roseberry*, 216 Kan. 486, 532 P.2d 1366, 1368–69 (1975). As a general rule, the landlord owed no duty to the tenant or the tenant's guests for dangerous or defective conditions of the premises. *Medlock*, 625 P.2d at 208; *Hefferin v. Scott Realty Co.*, 71 Wyo. 114, 254 P.2d 194, 197 (1953); and *see* Restatement (Second) of Torts §§ 335, 356 (1965).

Over time, the courts created exceptions to the rule of landlord nonliability, some of which have been recognized in Wyoming:

1. Undisclosed conditions known to lessor and unknown to the lessee which were hidden or latently dangerous and caused an injury. *Medlock*, 625 P.2d at 208.

2. The premises were leased for public use and a member of the public was injured.

3. Part of the premises was retained under the lessor's control, but was open to the use of the lessee. *Lyden*, 878 P.2d at 518.

4. Lessor had contracted to repair the premises. *Hefferin*, 254 P.2d at 197.

5. Negligence by lessor in making repairs. *Brubaker v. Glenrock Lodge Int'l Order of Odd Fellows*, 526 P.2d 52 (Wyo. 1974).

and *see* Restatement (Second) of Torts §§ 356–362 (1965).

*Ortega*, 902 P.2d at 202 (footnote omitted).

The district court ruled that none of these exceptions to landlord non-liability were applicable in this case. We perceive, however, that *Hefferin*, 254 P.2d 194, needs to be examined more critically in considering the fourth exception. In that case, we said:

As heretofore stated the lease in this case contained no covenant to repair. It is stated in 32 Am.Jur. § 657, p. 521: "In the absence of an agreement to the contrary, the landlord is not obligated to make repairs upon the demised premises during the term either to put the premises in repair or to keep them in such condition. The landlord is not bound to repair defects in the demised premises existing at the time he leased the same or occurring thereafter from any cause other than the act of the landlord." So it is said in 51 C.J.S., Landlord and Tenant, § 366, pp. 1073, 1074: "There is no implied covenant that the lessor will make any repairs to the demised premises during the term, even if the premises are in a dangerous condition, * * *." As a corollary to the foregoing rule, it is stated in 32 Am.Jur. § 662, p. 526, as follows: "The logical conclusion from the principle that the landlord is under no implied obligation as to the condition of the demised premises or as to the repair of defects therein is that the landlord is not responsible to the tenant for injuries to person or property caused by defects in the demised premises where the landlord has not made any warranty or contract as to the condition of the demised premises or as to the repair of defects and is guilty of no wilful wrong or fraud." To

a like effect see Restatement of the Law of Torts, section 355 and subsequent sections.

In this case plaintiff does not rely upon any contract contained in the lease between the parties but asserts that the defendant was liable under the promise which it made on or about March 9, 1951, to install a new ventilation system. There was no new consideration for any such promise or contract. It has been held that "when the relation of the parties is such that the tenant is not bound to continue the tenancy, the promise of the landlord to make repairs if the tenancy is continued is based on a sufficient consideration * * *." 51 C.J.S. 1085. In the case at bar, however, the lease was for a definite term of three years, and hence the foregoing statement does not apply. The rule applicable here is that stated in 51 C.J.S., Landlord and Tenant, § 368, p. 1084: "A contract or covenant to repair must be supported by a consideration. * * * a promise to repair, made by a landlord to his tenant during the tenancy, with no other consideration than such tenancy, is a nudum pactum, without consideration, and cannot be enforced." Numerous authorities are cited, among them the case of *Grace v. Williams*, 36 Ohio App. 569, 173 N.E. 448, 449, in which the court stated: "Two rules of law are involved: First, the landlord is under no obligation to repair premises, if he has not covenanted to do so. 16 Ruling Case Law, 1030, § 552; *Goodall v. Deters*, 121 Ohio St. 432, 169 N.E. 443. Second, the promise to make repairs during tenancy must be supported by a new consideration. 16 Ruling Case Law, 1033, § 553: 'It has frequently been held that the landlord is under no obligation to make repairs, unless such a stipulation is made a part of the original contract, and that any subsequent promise to make repairs, founded merely on the relation of the parties, and not one of the conditions of the lease, is without consideration, and for that reason creates no liability.'" And so it is said in 32 Am.Jur. § 730, p. 604: "An obligation on the part of a landlord to make improvements on the demised premises may arise from a subsequent agreement with his tenant provided such agreement is supported

by a consideration, but a subsequent promise, if not supported by consideration, is considered a nudum pactum, even though the improvement may benefit the reversionary interest." In the case at bar, the promise made by the landlord herein was wholly gratuitous and was not binding upon it and it follows from what has been said that the judgment of the trial court must be affirmed and it is not necessary to consider the other questions raised by the defendant herein.

*Hefferin*, 254 P.2d at 197. The district court dealt with *Hefferin* by concluding that the Trust had not contracted to make repairs.

■ In our judgment, this record is equivocal on that score. It is subject, however, to a fair inference that when the original oral lease arrangement was made between the Trust and Schukei, Inc., the "mutual understanding" that the Trust was responsible for structural repairs, including the overhead doors, was entered into at that time. If that were the fact, then the language from *Hefferin* about new consideration being required to support a subsequent promise to make repairs would not be pertinent in this instance. Further, if the "mutual understanding" was reached at some later date than when the original lease arrangement was made, there is no indication in this record that Schukei, Inc. was bound to continue the tenancy for any particular term. Consequently, under the rules adopted in *Hefferin*, a subsequent promise by the Trust to make structural repairs well may have been based on the agreement of Schukei, Inc. to continue the tenancy, which would be sufficient consideration.

■ *Ortega* did not reach any possible agreement to make repairs or maintain the premises. This case differs in that regard, and the record could lead to the conclusion that the promise to make repairs was a part of the initial lease negotiation, or if made later was supported by adequate consideration. What the parties intended from their arrangement is a question of fact which is subject to determination by the finder of fact, whether court or jury.

We have not had any occasion prior to this to discuss the problem of an oral "mutual understanding" amounting to a contract to repair. We said in *Hefferin*, 254 P.2d at 197, that an agreement by a landlord to make repairs must take the form of an express contract and should not be implied from the conduct of the parties. We look to the definition of an express contract found in Black's Law Dictionary 321 (7th ed.1999), which is "[a] contract whose terms the parties have explicitly set out."

■ The decisions of other state and federal courts are persuasive authority in considering an issue of first impression. *State ex rel. Wyoming Workers' Safety and Compensation Div. v. Sparks*, 973 P.2d 507, 510 (Wyo.1999). Several courts in other states have held that a lessor who agrees in a written lease to make necessary repairs is liable when failure to do so results in injury to a commercial tenant's employee or customer. *Ferber v. Orange Blossom Center, Inc.*, 388 So.2d 1074, 1075 (Fla.App.1980); *Wright v. Mr. Quick, Inc.*, 129 Ill.App.3d 226, 84 Ill.Dec. 518, 472 N.E.2d 478, 479 (1984), *rev'd on other grounds*, 109 Ill.2d 236, 93 Ill.Dec. 375, 486 N.E.2d 908 (1985); *Great Atlantic and Pac. Tea Co., Inc. v. Yanofsky*, 380 Mass. 326, 403 N.E.2d 370, 374 (1980); *Mobil Oil Corp. v. Thorn*, 401 Mich. 306, 258 N.W.2d 30, 34 (1977); *Nicks v. Joseph*, 82 A.D.2d 768, 440 N.Y.S.2d 218, 220 (1981). In a similar vein, the United States Court of Appeals for the Tenth Circuit, applying Wyoming law, has held that a lessor was liable to the employee of a lessee for injuries caused by a defective condition when the lessor contractually obligated itself to make repairs. *Stemple v. Phillips Petroleum Co.*, 430 F.2d 178, 182 (10th Cir.1970). The Arkansas Supreme Court has held that an oral agreement for repairs was sufficient to support such liability. *Majewski v. Cantrell*, 293 Ark. 360, 737 S.W.2d 649, 651 (1987). In that case, as part of an oral lease, the lessor and lessee agreed that the lessor would maintain the roof of the building. An employee of the lessee was injured when she slipped on water that had leaked through the unrepaired roof. *Id.* at 650. The Supreme Court of Arkansas upheld a jury verdict for the employee, holding that the oral lease agreement established a duty on the part of the lessor to maintain the roof. *Id.* at 651. We are in accord that an oral lease agreement can establish a duty on the part of the landlord to make repairs sufficient to invoke the fourth exception to the rule of landlord immunity that is set forth in *Ortega*, 902 P.2d at 202.

■ In this instance, we know that the Trust and Schukei, Inc. had an oral lease agreement and an oral arrangement relating to repairs. The record is equivocal as to whether the repair agreement was part of the lease agreement. If it was not, the record is silent as to any commitment by Schukei, Inc. to continue the tenancy if the Trust agreed to make repairs to the structure, which would constitute additional consideration supporting the agreement to repair. We perceive these, however, as genuine issues of material fact which, combined with the legal duty of care flowing from such an agreement, make the determination a mixed question of law and fact in this instance. It is appropriate in such an instance to submit the question to the jury or the court as a finder of fact. *Wilder v. Cody Country Chamber of Commerce*, 868 P.2d 211, 218 (Wyo.1994).

We reverse and remand this case for further proceedings in the district court consistent with this opinion.