[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON TOWN OF DEEP RIVER'S MOTION FOR SUMMARY JUDGMENT
This action concerns plaintiff's claims for personal injuries allegedly sustained within office space leased by her employer, PCI Medical, Inc. ("PCI"), in a building owned by the Town of Deep River ("Deep River" or the "Town"). By Motion for Summary Judgment, dated November 17, 1999, Deep River requests judgment on the Second Count of plaintiff's Substituted Complaint, dated May 13, 1999, in which plaintiff seeks recovery from Deep River for municipal negligence, pursuant to Conn. Gen. Stat. § 52-557n. Oral argument was heard on February 28, 2000. For the reasons stated below, the court denies the motion.
I. Procedural Background and Facts
CT Page 4864-bk
In her Substituted Complaint (the "Complaint"), plaintiff set forth claims against defendant, JJL Electric, LLC ("JJL") (in the First Count) and against Deep River. In the Second Count, addressed to the Town, par. 1, she alleged that on March 3, 1997 she was "in the course of her employment occupied by PCI at 610 Industrial Park Road" in Deep River, which she defined as "the premises." Id. Further, she stated that Deep River "owned, operated, maintained and controlled the premises" and leased them to PCI by written lease, dated February 14, 1997 (the "lease"), a copy of which was annexed to the Complaint. Id., par. 3. Deep River's Amended Answer, dated September 30, 1999 ("Answer"), admits the leasing but denies operating, maintaining or controlling the premises.
On the date of the alleged incident, JJL's personnel were on the site, "for the purpose of installing overhead lights on the premises." Complaint, Second Count, par. 4.[1] Plaintiff claimed that, as JJL worked on the lights, "their actions caused the tracking and lighting fixtures over the plaintiff's head to fall on the plaintiff, striking her on the head," resulting in serious injuries. Id., par. 5. In response to these allegations, Deep River left the plaintiff to her proof.
Plaintiff also claimed that the Town should have known that the lighting equipment was, as of the date of the lease and before, "in a state of disrepair such that it rendered hazardous to lawful users and those who would implement repairs to the same." Id., par. 6. Plaintiff asserted that her injuries and damages were caused by the Town's negligence and carelessness (a) concerning the lighting equipment's construction; (b) in failing to place barriers or warning signs; (c) in allowing the conditions to exist for an unreasonable time without remedying them; and (d) in failing to correct the conditions when, the Town knew or, in the exercise of "reasonable due care," the Town should have known of the conditions. Id., par. 7. Deep River denied these allegations.
As a result, plaintiff claimed various injuries and consequences, including a cervical sprain and strain, tenderness and pain, aggravation of a pre-existing degenerative disc disease with nerve root irritation, and paraesthesia running into her hands. Id., par. 8. She has treated with medical professionals and claims that she will need additional care for what, "[i]n all probability" are permanent injuries. Id. She also claimed a partial disability, rendering her unable to or limiting her ability to participate in many of her prior activities. Id., par. 8-12. In addition, she claimed lost income and that her earning capacity has been and will be permanently impaired. Id., par. 13. CT Page 4864-bl
In its Second Special Defense, Deep River contended that it is not liable since "JJL was acting as an independent contractor employed by the Town, with JJL retaining the sole control over the means and methods of the execution of their tasks." Answer, at 4. The Town also has asserted a cross claim against JJL, seeking indemnification; and a counterclaim against PCI, as intervening plaintiff, based on the claim that PCI agreed, in the lease, to indemnify Deep River from injuries to persons in the premises.
In support of its motion, Deep River submitted two affidavits from Richard Smith, its First Selectman, dated November 12, 1999 ("Smith Aff.") and dated February 23, 2000 (Smith Suppl. Aff.").[2] In the former, at par. 5, Mr. Smith averred that, under the lease, par. 9, PCI was bound to indemnify the Town from public liability claims and was responsible for making improvements to the premises. Lease, par. 12; Smith Aff., par. 6.
Further, he stated that the Town has not had possession or control of the portion of the premises where plaintiff was allegedly injured since the effective date of the lease, March 1, 1997. Smith Aff., par. 7. According to him, JJL was hired by the Town, based on an oral contract, to install lighting appliances at the premises. Id., par. 9. Under this contract, he asserted, "[t]he Town retained no right to control the manner or method employed by JJL Electric to accomplish the task of installing the lighting appliances." Id., par. 10. No Town employee was present at the portion of the premises where plaintiff was allegedly injured on the date of the occurrence. Id., par. 11. He concluded by stating that the Town "did not exercise any control over the manner or method used by JJL Electric to install lighting appliances" on the date when plaintiff was allegedly injured. Id., par. 12. In the later affidavit, Mr. Smith expands on these assertions by listing the indicia by which the Town did not have the right to control and did not control JJL's work. Smith Suppl. Aff. at par. 5.
In response to the motion, plaintiff submitted the affidavit of Mr. Philip Coles, President of PCI, dated July 28, 1999 ("Coles Aff."), in which he stated that PCI entered into the lease, which required the Town "to deliver the space demised with an installed ceiling and lights." Coles Aff., par. 4. On March 3, 1997, the date plaintiff claimed she was injured, JJL was on the premises installing lighting fixtures in the ceiling. Id., par. 5. PCI had no contractual or other relationship with JJL; the work JJL performed was not under PCI's control. Id., par. 8. Further, he claimed that the ceiling or lighting fixture being installed CT Page 4864-bm over plaintiff's head "had no safety chains or cables to secure them to the building's structural members overhead. . . ." Id., par. 7. No other evidence was submitted in opposition to the Town's motion.
II. Standard of Review
Practice Book § 17-49 provides that summary judgment shall be granted "if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. Elliott v. City ofWaterbury, 245 Conn. 385, 391 (1998); Barrett v. Danbury Hospital,232 Conn. 242, 250 (1995). "The test for summary judgment is whether a party would be entitled to a directed verdict on the same facts." Wilsonv. New Haven, 213 Conn. 277, 279-80 (1989); Batick v. Seymour,186 Conn. 632, 647 (1982). "Summary judgment procedure, generally speaking, is an attempt to dispose of cases in a manner which is speedier and less expensive for all concerned than a full-dress trial." Orensteinv. Buckingham Corp., 205 Conn. 572, 574 (1987); Mac's Car City, Inc. v.American National Bank, 205 Conn. 255, 261 (1987).
A defendant may establish his entitlement to judgment on a special defense via a motion for summary judgment. See Burns v. HartfordHospital, 192 Conn. 451, 455-56 (1984); Knudsen v. Volpe,1998 Ct. Sup. 14292, 14310 (1998) (Sheldon, J.). While the moving party "has the burden of presenting evidence that shows the absence of any genuine issue of material fact, the opposing party must substantiate its adverse claim with evidence disclosing the existence of such an issue. Witt v. St.Vincent's Medical Center, 52 Conn. App. 699, 702 (1999); Haesche v.Kissner, 229 Conn. 213, 217 (1994). The opposing party must do more than merely assert the existence of a disputed issue of fact.
 Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment.] (internal quotation marks omitted) Burns v. Hartford Hospital, 192 Conn. 451, 455, 472 A.2d 1257
(1984).
Water Way Properties v. Colt's Mfg. Co. Inc., 230 Conn. 660, 665
(1994). Summary judgment procedure would be defeated as a whole if the mere assertion that a material factual dispute existed could force a case CT Page 4864-bn to trial. Great Country Bank v. Pastore, 241 Conn. 423, 436 (1997).
When a party moves for summary judgment "and there [are] no contradictory affidavits, the court properly [decides] the motion by looking only to the sufficiency of the [movant's] affidavits and other proof." Heyman Assoc. No. 1 v. Ins. Co. of Penn., 231 Conn. 756, 796
(1995).
III. Discussion
Deep River seeks summary judgment based on two related theories. First, it asserts that in this "defective premises" case, it cannot be held liable to plaintiff since it was a lessor which was not in possession or control of the leased premises. Town's Memorandum of Law, dated November 17, 1999 ("Town's Memo. of Law"), at 3-6. Second, it claims that if plaintiff was injured by negligence, it was JJL, acting as an independent contractor, which was at fault, thereby insulating the Town from liability. Town's Memo. of Law, at 7. In response, plaintiff argues that there are genuine issues of fact to be resolved, since, at the time in question, the Town had not surrendered control of the premises where plaintiff was injured, and was still performing construction work in order to deliver the premises to PCI. Plaintiff's Opposition, dated January 12, 2000, at 1. She also argues that the Town's submission "does not speak to the Town's obligations with regard to hidden defects about which it alone knew or should have known." Plaintiff's Memorandum of Points and Authorities, dated January 12, 2000 ("Plaintiff's Memo."), at 4. Further, she asks that the motion be denied so that discovery can be had concerning the contractual relationship between JJL and the Town. Id. at 3-4.
Possession And Control of The Leased Premises
To succeed, plaintiff's negligence claim against Deep River must be founded upon a breach of duty owed to her. See Neal v. Shiels, 166 Conn. 3,12 (1974). Possession and control of leased premises are the lynchpins of premises liability claims against lessors. See Mack v. Clinch,166 Conn. 295, 296 (1974); Smith v. Housing Authority, 144 Conn. 13, 16-17
(1956). "Control" has been defined as "the power or authority to manage, superintend, direct or oversee." (citation and internal quotation marks omitted) Alderman v. Hanover Ins. Group, 169 Conn. 603, 606 (1975). Generally, a tenant
 takes the premises as he finds them and bears the risk of any defective conditions which are within the area CT Page 4864-bo under his exclusive possession and control. . . . This rule, however, does not apply to defects which are the result of faulty design or disrepair and which existed at the beginning of the tenancy, were not discoverable by the tenant on reasonable inspection, and were known, either actually or constructively, to the landlord.
(citations and internal quotation marks omitted) Gore v. People's SavingsBank, 235 Conn. 360, 374 (1995). Of course, this rule also does not apply "where the landlord retains control of a portion of the demised premises. In such a case, the landlord must use reasonable care to keep that portion of the premises in a reasonably safe condition." Pollack v.Gampel, 163 Conn. 462, 468 (1972).
Resolution of the issues of possession and/or control in an individual case is dependent on the parties' agreement and their actions.
 No matter what the written lease may say and even if it clearly does not reserve the offending portion of the premises for the landlord's control, the landlord could still be found to be in possession and control of that portion of the premises if in fact it did actually engage in activities regarding such an area which made it clear it possessed control.
Nicholas v. Stop Shop Corp., 1998 Conn. Super. LEXIS 3392, at 6,1998 Ct. Sup. 14663, 14666 (December 3, 1998) (Corradino, J.). Thus, contrary to the Town's argument, the language in the lease alone cannot be dispositive here.
A lease is a contract and the principles of contract construction apply to its interpretation. Bluebird Aviation Corp. v. Aviation Comm.,42 Conn. App. 209, 214 (1996). "Where there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law."(internal quotation marks omitted) Gateway Co. v. DiNoia, 232 Conn. 223, 229-30 (1995); Chance v.Norwalk Fast Oil, Inc., 55 Conn. App. 272, 279-280, cert. denied, 1999 Conn. LEXIS 438 (1999). Where the contract's provisions are clear and unambiguous, they are to be given effect according to its terms. Isslerv. Issler, 250 Conn. 226, 235 (1999).
The lease here is clear and unambiguous. The lease term began on March CT Page 4864-bp 1, 1997. Lease, par. 3. Paragraph 9 provided that,
 [t]he Tenant agrees to obtain and keep in force, at its expense, a policy of public liability insurance . . . protecting and indemnifying the Landlord against all public liability occasioned by any claims for injury and damage to persons or property or loss of life or property occurring in the leased premises.
Paragraph 15 of the lease provided that landlord was to have free access to the leased premises "at any reasonable time" to make repairs. "Maintenance" was defined to include "repairs." Id., par. 16. Landlord was required to "perform all maintenance to the exterior and bearing structural members of the building (except for Tenant's fixtures, improvements or signs), to the electrical systems up to the main breaker panel and exterior plumbing systems which provide main service to the leased premises." Id.
As noted above, these provisions, in themselves, do not resolve the issues. Plaintiff argues, based on Mr. Coles' Affidavit, that, when PCI came into possession of the premises, the Town was still engaged, through JJL's work, in preparing them for PCI's occupancy, and that this constituted an exercise of possession and control which resulted in plaintiff's injuries.
Certain basic facts about what occurred are undisputed. According to Mr. Smith, JJL was hired by the Town. Smith Aff., par. 9. Mr. Coles' Affidavit, proffered by plaintiff, agreed, stating that JJL's services were not procured by PCI. Coles Aff., par. 6. Moreover, he claimed that PCI had no contractual relationship with JJL and that JJL was not under PCI's control. Id., par. 8. Clearly, JJL was working in the leased premises at the time of the accident.
In reply, Deep River expands on its assertion that JJL was acting as an independent contractor. Smith Suppl. Aff., par. 5. Plaintiff does not dispute the allegations of this affidavit. Instead, her Reply, dated February 25, 2000, at 5, states that "these new assertions may provide a basis for judgment in the Town's favor." As noted, in Plaintiff's Memo at 3, and again in her Reply, at 4-5, she seeks additional time for discovery on the independent contractor question. The court notes that neither of Mr. Smith's affidavits addresses the Town's knowledge of any hidden defects.
Independent Contractor Liability
CT Page 4864-bq
Where an independent contractor has been employed, it is the contractor who is deemed to be responsible for negligence in the performance of the work.
 The general rule is that where the owner of premises employs an independent contractor to perform work on them, the contractor, and not the owner, is liable for any losses resulting from negligence in the performance of the work. (Citations omitted). The basic premise is that the assumption and exercise of control over the offending area is deemed to be in the independent contractor.
Darling v. Burrone Bros., Inc., 162 Conn. 187, 196 (1972); Wright v. Coe Anderson, Inc., 156 Conn. 145, 151 (1968). "`This applies not only to contractors doing original work, but also to those who make repairs, or install parts, as well as supervising architects or engineers.'" Zapatav. Burns, 207 Conn. 496, 517 (1988) (quoting W. Prosser and W. Keeton, Torts (5th Ed.) 104A, p. 723); Ramos v. Waterbury Housing Auth.,1999 Ct. Sup. 8958, 8959 (July 8, 1999) (Pellegrino, J.). In view of this decisional authority, it is immaterial whether the work being done by JJL, when plaintiff was allegedly injured, was work that was required to be completed in preparation for PCI's occupancy, or constituted repairs, maintenance, or improvements as provided under the lease.
An independent contractor has been defined as:
 one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer, except as to the result of his work.
(citations omitted) Silverberg v. Great Southwest Fire Ins. Co.,214 Conn. 632, 639 (1990). "The test of the relationship is the right to control. It is not the fact of actual interference with the control, but the right to interfere, that makes the difference between an independent contractor and a servant or agent."(citation and internal quotation marks omitted) Tianti v. William Raveis Real Estate, Inc., 231 Conn. 690, 697
(1995).
Whether or not JJL was acting as an independent contractor is a question of law for the court. "The determination of legal principles that govern the uncontested facts of a party's employment is a question CT Page 4864-br of law." Hunte v. Blumenthal, 238 Conn. 146, 150 (1996); Wright v. Coe Anderson, supra, 156 Conn. at 151. "[E]vidence indicating an actual assumption and exercise of control of the area or instrumentality from which an injury has resulted retains its full significance." Trainor v.Frank Mercede Sons, Inc., 152 Conn. 364, 369 (1964).
Here, in his original affidavit, at pars. 10 and 12, and in the Smith Suppl. Aff., at par. 5, Mr. Smith stated that, under Deep River's contract with JJL, the Town retained no right to control and did not control the manner or method of JJL's installation of the lighting appliances. "Specifically," the supplemental affidavit stated that the Town had no right to control and did not control: the order in which each lighting fixture (the "fixture" or "fixtures") was installed; the placement of each fixture; the selection of precautions to be taken while each fixture was installed; the placement of warnings around the work area; the exclusion of the building's occupants, or others, from the work area; the manner or method of the connection or disconnection of any safety or support chains between the fixtures and the building's structural members; the supervision of JJL's employees; or the maimer or method of the connection or disconnection of appliances or wires between the fixtures and the building's appliances or structural members. Id. No Town employee was present on the day when plaintiff was allegedly injured, before or while JJL did its work pursuant to its contract with the Town. Id., par. 6.
These affidavits establish that, at the time at issue, JJL was acting as an independent contractor, not subject to the Town's control. However, as noted, the movant's affidavits do not speak to other aspects of plaintiff's claims. Paragraph 6 and 7 of the Complaint alleged a state of disrepair on the premises that pre-dated JJL's arrival, knowledge of which plaintiff claimed was chargeable to the Town. Since the court must view the evidence in the light most favorable to the nonmoving party, and since the movant must show the absence of any genuine issue of material fact, the motion must be denied since the proof offered does not address these aspects of plaintiff's claims.
CONCLUSION
Since the Town has not sustained its burden of proof, the motion for summary judgment is denied.
It is so ordered.
BY THE COURT CT Page 4864-bs
ROBERT B. SHAPIRO JUDGE OF THE SUPERIOR COURT